## Case No. 16,376.

### UNITED STATES v. STANLEY.

[6 McLean, 409.] 1

Circuit Court, D. Indiana. May Term, 1855.

PERJURY—PRE-EMPTION OF PUBLIC LANDS—CONFLICTING CLAIMS.

1. A false swearing to obtain a pre-emption right, is made perjury by statute.

2. The person commencing an improvement has a right to continue, and any one who intervenes may be considered a trespasser.

[Approved in Atherton v. Fowler, 96 U. S. 519.]

3. But if a first occupant give way to a second, and the right of pre-emption is granted to the second, it is good against all the world except the first occupant.

4. And if he abandon his right, the right cannot be questioned.

5. Where perjury is charged on a written affidavit, and it appears clearly from several witnesses that the affiant stated the facts truly, and was advised that they were substantially the same as stated in the writing, by a lawyer in whom the affiant confided, and he yielded to such an influence in taking the oath, it is not perjury, the guilty motive being wanting.

[Cited in U. S. v. Edwards, 43 Fed. 67.]

[Cited in Lambert v. People, 76 N. Y. 226; Barnett v. State (Ala.) 7 South. 416.]

[This was an indictment against Solomon Stanley for perjury.]

The U. S. Dist. Atty., for plaintiff.

Messrs. Walpole, for defendant.

THE COURT (charging jury). This is an indictment for perjury, under the 13th section of the act of congress of the 4th September, 1841 [5 Stat. 453], for swearing falsely to establish a pre-emption right, which, by that act, is made perjury. The act of the 3d of August, 1846 [9 Stat. 50], provides "that every actual settler, being the head of a family, or widow, or single man over the age of twenty-one years, who is now in possession, by actual residence as a housekeeper, of any tract of public land within the limits of the several cessions by the Miami Indians, in Indiana, which have not yet been proclaimed for sale by the president, or any such person who shall hereafter erect a dwelling house and become a housekeeper upon any such tract of land, shall be entitled to the same benefits and privileges with respect to said land, as were granted to settlers on other lands by the act approved 22d June, 1838 [5 Stat. 251], entitled 'An act to grant pre-emption rights,' and the several amendatory provisions of said act," &c. And in the 2d section of said act, it was pro-

1 [Reported by Hon. John McLean, Circuit Justice.]

vided "that in every case, the affidavit of the claimant under that act should be like unto that prescribed by the act of the 22d June, 1838, and the same shall be filed, and proof and payment made for the land claimed, at any time before the day fixed by the president's proclamation for the public sale of said land." The written affidavit was read on which the perjury was assigned, and which was made and filed by the defendant, at the time of application to the register of the land office for the pre-emption. A pre-emptive right to a quarter section was claimed on the ground that John Stanley had built a dwelling house on the same, which he with his family occupied, within the above cession of the Miami Indians. This affidavit was made the 23d March, 1854.

It appears from the testimony that a man by the name of Majors, and hands employed by him, entered upon the land in controversy, on the 13th March, 1854, cut logs for a cabin, and the next day it was built up to the roof. Finding the building in this condition, John Stanley, the brother of defendant, came to the cabin with his loaded wagon and entered into it, by cutting a door, and had it covered with materials which had been prepared by Majors. When Majors returned to finish the house, he found the defendant in possession of it, who said that his brother had gone to the land office to enter the land, and he remained to protect the possession. Majors entered into the house and his trunk was handed in. His entry was resisted by defendant, and finding that he could not stay there, Majors took possession of another quarter section. The affidavit of defendant stated that "he knows from personal observation, that the said John Stanley did, on the 14th day of March, 1854, enter into a dwelling house with his family, consisting of himself and wife and two children, which the said John Stanley previously caused to be erected on the above described quarter section of land, and that he, the said Stanley, continues to make said house his only home." After the affidavit was drawn up, the defendant stated that he did not feel free to swear to it. And he then observed that when he first saw the house, it was a pen, there being no roof on it; that his brother cut out the door and covered the house on the 14th, but he did not say who built the pen. After the statement of the above facts, the defendant was induced to make the affidavit on the advice of a connection of his who was present, and who was a lawyer, believing that it contained the facts substantially as stated by him. Some nine or ten persons proved the good character of the defendant, and that his standing was as fair and unexceptionable, as any other person of his age in that part of the county where he lived.

THE COURT, in their charge to the jury, said there could be no doubt that John Stanley was guilty of a trespass in entering

into the partly built cabin, and that he could not have procured the pre-emptive right to the quarter section, had Majors claimed it, and had all the facts been represented to the register and receiver of the land office. Majors was entitled to the possession of the improvement, so far as it was made by him. But he relinquished his right, as appears from the testimony, and settled upon another quarter in the neighborhood. This abandonment left John Stanley in possession of the improvement, and he made the house habitable by cutting out the door and putting a roof on it.

But the inquiry for the jury is not as to this particular matter, but whether the defendant was guilty of wilful and corrupt perjury. It does not appear that he had any knowledge who had constructed the pen of the cabin, but he knew that his brother had cut out the door and put on the roof. And he objected to swearing to the written affidavit, it appears, until his friends, and especially the lawyer, who was a connection of his, advised him to swear to it, as it embraced only the facts substantially as stated by him. If you believe, gentlemen, that he yielded to this influence in swearing to the paper, and that in his repeated relations he gave a true statement of the facts as they transpired, according to his knowledge of them, he is not guilty of perjury. To constitute perjury there must be a wilful and corrupt statement of a falsehood, material to the matter in hand. You are to determine the facts in the case, and judge of the guilt of the defendant. He has shown an excellent character, and this, under the circumstances, and indeed under all circumstances where the evidence of guilt is not clear, will receive due consideration by a jury.

Verdict of not guilty.