# Barnett *v.* The State.

*Indictment for Perjury.*

1. *Sufficiency of indictment.*—An indictment for perjury is sufficient (Code, § 3908,), if it states the substance of the proceeding in which the false testimony was given, the name of the officer by whom the oath was administered, his authority to administer it, the fact testified to, the

[Barnett v. The State.]

materiality of the testimony and that it was willfully and corruptly false.

2. *Secondary evidence; testimony before grand jury.*—The alleged false testimony having been given before the grand jury, pending their investigation of a criminal charge preferred by the defendant against another person, for having procured his signature by mark to a bill of sale by false pretenses as to the character of the instrument; the county solicitor, who swore and examined him, may testify as to what occurred before the grand jury, without producing the paper, or accounting for its absence, and without showing that it was produced before the grand jury

3. *Cross-examination of impeaching witness.*—A person called to impeach the character of a witness, having testified that their relations were friendly, may be asked, on cross-examination, if he did not once go to arrest said witness with a shot gun, on a warrant sworn out by himself; and having announced that he did not swear out the warrant, but carried a gun when going to arrest the defendant in company with the special officer who had the warrant, he may be asked the name of that officer.

4. *Legal advice as defense.*—On a prosecution for perjury in falsely swearing before the grand jury as to facts, the existence or non-existence of which was personally known to the defendant, he can not be permitted to prove that he acted under legal advice, especially when it does not appear that he truly stated the facts to the attorney.

5. *Obtaining signature to writing by false pretenses; perjury in making charge.*—A conviction may be had for obtaining a person's signature to a written instrument by false pretenses (Code, § 3813), on proof that an unattested signature by mark was so obtained, since forgery might be predicated of an instrument so signed; and even if it might be shown in defense of that prosecution that such unattested mark was not a signature or subscription within the terms of the statute, yet the person who preferred the charge, and falsely swore that his signature was procured by false pretenses on the part of the defendant, can not set up this defense against a subsequent prosecution for perjury.

FROM the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

The indictment in this case charged that the defendant, Ben. Barnett, "on his examination as a witness before the grand jury of said county, at the February term, 1887, of the City Court of Montgomery, duly sworn to testify by Tennent Lomax, solicitor of said county of Montgomery, who had authority to administer such oath, in a case before said grand jury, against one Berry Johnson, for the criminal offense of obtaining the signature of said Ben. Barnett by false pretenses, falsely swore that said Berry Johnson obtained his, said Barnett's signature, to a certain bill of sale of two yearlings belonging to said Ben. Barnett, by stating to said Barnett that he was signing as a witness to another bill of sale, from some person unknown to said grand jury to said Berry Johnson, and that he knew nothing of having made a bill of sale of said yearlings to said Johnson, until said yearlings were demanded by said Johnson; the matter

so sworn to being material, and the testimony of said Ben. Barnett in relation thereto being willfully and corruptly false." The defendant demurred to the indictment, (1) "because it fails to state the substance of the proceedings with which the alleged false oath was connected;" (2) "because it shows that the testimony alleged to be false was given in a case before the grand jury where no offense was charged;" (3) "because it shows that the oath, under which the alleged perjury was committed, was an extra judicial oath;" (4) "because it does not follow the form prescribed by the Code in indictments for perjury;" (5) "because it fails to show whether the alleged perjury was committed on a trial of felony, or on other proceedings." The court overruled the demurrer, and issue was joined on the plea of not guilty.

On the trial, as appears from the bill of exceptions, the State introduced Tennent Lomax as a witness, the solicitor of Montgomery county, who testified to the facts before the grand jury as alleged in the indictment; but, having further stated that he never saw the bill of sale, or writing referred to, that it was not produced before the grand jury, nor its absence accounted for, the defendant moved to exclude all his testimony in reference to it, and excepted to the overruling of his objection. The State introduced Berry Johnson as a witness, who testified to the execution of the bill of sale for the yearlings by the defendant, its loss, contents and consideration; also, that he himself wrote the instrument, and wrote the names of the defendant and the two attesting witnesses, each of whom made his mark by "touching the pencil." It appeared that, after Johnson had taken possession of the yearlings, the defendant brought an action for them before a justice of the peace, and employed J. M. Falkner as his attorney; that the defendant swore, on the trial before the justice, that he had never signed any bill of sale, and knew nothing about the one there produced; and that the justice, on the evidence adduced before him, decided the case in favor of Johnson. The defendant introduced said Falkner as a witness on the trial, and proposed to prove by him, "that he heard all the witnesses testify before the justice about said bill of sale, and about Ben. Barnett's signature thereto; and that after learning all the facts about its execution, he had advised said Barnett to go before the grand jury, and there prosecute said Johnson for obtaining his signature by false pretenses." The court refused to admit this evi-

[Barnett v. The State.]

dence, on objection by the State, and the defendant excepted. There were other exceptions to the evidence, but they require no special notice.

The defendant requested the following charges in writing, and duly excepted to their refusal: (1.) "Under all the evidence in this case, the jury must acquit the defendant." (2.) "If the jury believe from the evidence that the so-called bill of sale, alleged to have been signed by the defendant to Berry Johnson, was not signed by any one who could write his name, and was not witnessed by any one who could write his name; then said bill of sale was not subject of forgery, and the defendant must be acquitted."

MOORE & FINLEY, for appellant.—The demurrer to the indictment should have been sustained.—*Langford v. State*, 45 Ala. 26; *Davis v. State*, 79 Ala. 20. (2.) The testimony of Lomax, as to a bill of sale, ought to have been excluded, He had never seen the paper, and merely stated his opinion, conclusion, or inference from what he had heard.—*Minniece v. Jeter*, 65 Ala. 222; *Insurance Co. v. Peacock*, 67 Ala. 253. (3.) No bill of sale was produced before the grand jury, nor its absence accounted for. The grand jury could only receive legal evidence, and its investigation was unauthorized. Code, § 4350; *Washington v. State*, 63 Ala. 189. (4.) Evidence of the advice of counsel should have been received, especially when it was shown that the defendant was considered demented in the neighborhood in which he lived. *Hood v. State*, 44 Ala. 81. (5.) The charges asked should have been given. The instrument counted on was not the subject of forgery.—Code, §§ 1, 3813; *Rembert v. State*, 53 Ala. 468; *Bickley v. Keenan*, 60 Ala. 293.

WM. L. MARTIN, Attorney-General, for the State.—(1.) As to the sufficiency of the indictment, see Code, Form 67, p. 275; *Hicks v. State*, 86 Ala. 30; *Davis v. State*, 79 Ala. 20; *Peterson v. State*, 74 Ala. 34; *Williams v. State*, 68 Ala. 551; *Jacobs v. State*, 61 Ala. 448. (2.) Lomax merely stated the testimony of the defendant before the grand jury, and it could be proved in no other way. (3.) It is permissible to impeach a witness, on cross-examination, by proof of bias, prejudice, or partiality. (4.) The proffered evidence did not bring the case within the authorities which hold that the advice of counsel may constitute a defense.—2 Whart. Crim. Law, § 1249; *United States v. Stanley*, 6 McL. 409;

[Barnett v. The State.]

*State v. McKinney*, 42 Iowa, 205; *Jessie v. State*, 20 Geo. 169. (5.) The charges asked were properly refused.—1 Whart. Crim. Law, § 680; *Rembert v. State*, 53 Ala. 467; *Thompson v. State*, 49 Ala. 16; *Wimberly v. Dallas Co.*, 52 Ala. 196; *Bickley v. Keenan*, 60 Ala. 293.

McCLELLAN, J.—The indictment in this case sufficiently alleges every ingredient of the crime of perjury. It states the substance of the proceeding in which the false testimony was given, the materiality of the testimony, the name of the officer by whom the oath was administered, and that he was authorized by law to administer the oath, the fact testified to on which perjury is assigned, and that the defendant's testimony in that behalf was willfully and corruptly false. The demurrer was properly overruled.—Code, §§ 3813, 3908; *Hicks v. State*, 86 Ala. 30; *Williams v. State*, 68 Ala. 551; *Peterson v. State*, 74 Ala. 34; *Davis v. State*, 79 Ala. 20.

The bill of sale, about which the defendant testified before the grand jury, was presumably in the hands of Johnson, who was being prosecuted for having, by undue means, obtained Barnett's signature to it. It would scarcely be reasonable to require the prosecution to inform Johnson that the paper was needed before the grand jury in order to get an indictment against him, and to require him to produce it, or to expect that he would produce it, for such a purpose. The objections to the testimony of Mr. Lomax, the solicitor, as to what occurred before the grand jury in reference to the paper, on the grounds that it was not produced, or its loss accounted for, and that the witness had never seen it, were patently without merit.

Morrill, a witness called to impeach the character of Johnson, a witness for the State, having, on cross-examination, testified that he and Johnson were friendly, it was entirely competent for the prosecution to ask him the further question, "If he did not go to arrest Johnson with a shot-gun, upon a warrant sworn out by himself?" The evidence thus sought to be elicited tended directly to contradict the friendliness deposed to by the witness, and to taint his testimony as to Johnson's bad character with the element of personal ill-will; and hence to lessen its weight with the jury. And Morrill having replied that, while he did not swear out the warrant, he did go to arrest Johnson with a gun, along with a special officer, who had the warrant, we see no error in permitting the State to further ask him, who this special officer was.

[Barnett v. The State.]

The general rule unquestionably is, that the advice of counsel can afford no protection against the punitive consequences of criminal acts. Whatever the rights of a defendant are in respect to the doing of the act charged, they are available to him in defense, whether he was advised of them or not; and no amount of assurance, even from those learned in the law, of the existence of rights in the premises, which in point of fact do not exist, can justify or excuse an act otherwise criminal. The giving of such assurance or advice neither increases nor diminishes criminality in any degree, and evidence of it is, therefore, irrelevant.—*Weston v. Com.*, 111 Pa. St. 251.

One of the exceptions to the general doctrine is found in those cases of alleged perjury, in which the truth or falsity of the matter charged as being willfully and corruptly false is a mixed question of law and fact. If, in such case, the facts are fully and in good faith laid before counsel, and upon them he advises, as a matter of law, that a certain statement may be made which will be the truth, and, acting on this advice, the client swears to the statement, believing he has been correctly advised, it can not be said that this oath is willfully and corruptly false, and hence a charge of perjury can not be predicated upon it. Instances of this kind usually occur with respect to affidavits, the truth of which depends upon some question of law,—as, for attachment, where the question is fraud *vel non* in the disposition of property by the debtor; or in a bankrupt's schedule, and he is wrongly advised that certain property may be omitted, &c. *United States v. Conner*, 3 McL. C. C. 573; *Hood v. State*, 44 Ala. 81; *State v. McKinney*, 42 Iowa, 205; *United States v. Stanley*, 6 McLean, 409. We do not think the advice offered in evidence in the case at bar comes within the doctrine of the cases cited. The matter testified about was purely one of fact; it involved no question of law. Whether Johnson had induced the defendant to sign the due-bill, by the false pretense that it was another paper, and that his signature was wanted only as an attestation to the subscription of the party bound thereby, was a matter affording no room for professional advice. Barnett knew better than the attorney could have known what the real fact was, and no sort of advice based on the assumption of fact, which he knew to be false, could justify or excuse anything he did under it. Moreover, it does not appear in the statement accompanying the offer of this evidence, that he ever laid

the facts before the attorney, but left him to draw the conclusion upon which the advice proceeded from other sources. A proper showing was not made, and could not, in the nature of things, be made, for the admission of this evidence. It was properly excluded.

The indictment charges, that the defendant swore before the grand jury that one Johnson had obtained his signature to a certain bill of sale by false pretenses, and that this statement was false. We are unable to see how Barnett could defend against this prosecution for perjury, in respect to that statement, by showing that Johnson *had not* obtained his signature, in that his subscription to the paper was not a *signature* within the terms of the statute. He might as well attempt to rest his defense on the fact that he had not put his hand to the paper at all, or, in other words, that Johnson had not obtained his signature, either by false pretense or otherwise; and in either case he would be in the very anomalous attitude of *defending* against a charge of perjury, by showing that his alleged false statement was false in fact. So that it is wholly immaterial whether the subscription by mark, shown in the testimony, was a " signature" within the meaning of section 3813 of the Code. Whether it was or not, the defendant is equally guilty. That inquiry would be pertinent, if Johnson was on trial for obtaining Barnett's signature by false pretenses; but it is wholly foreign to any issue presented by this record.

In response to the arguments of counsel on either hand, it would, perhaps, be as well to say, that we do not doubt that the offense denounced by section 3813 would be committed, by obtaining an unattested signature by mark to a bill of sale by false pretenses, since forgery might be predicated of a bill of sale so signed, and by the terms of that section it is made to extend to all "written instruments the false making of which is forgery."—*Bickley v. Keenan,* 60 Ala. 293.

Affirmed.