## McNIEL v. UNITED STATES.*

(Circuit Court of Appeals, Fifth Circuit. January 22, 1907.)

No. 1,567.

1. BANKRUPTCY—PROSECUTION FOR CONCEALMENT OF PROPERTY—DEFENSES.

On the prosecution of a bankrupt for concealing money from his trustee, testimony to show that his attorney advised him to continue his business until the usual time for closing on the day when the petition was filed and the adjudication made is immaterial, since, if true, and the business was continued in good faith and without criminal intent, and the money was received for goods sold during that time, such facts gave defendant no right to withhold it from his trustee.

2. SAME—INDICTMENT—AVERMENT OF KNOWLEDGE.

An indictment which charges that a bankrupt unlawfully, knowingly, willfully, and fraudulently concealed from his trustee certain property belonging to his estate in bankruptcy carries with it a sufficient averment of his knowledge that such property belonged to his estate.

In Error to the District Court of the United States for the Northern District of Texas.

The plaintiff in error was convicted in the court a quo on the third count of an indictment charging as follows: "And the grand jurors aforesaid, upon their oaths aforesaid, do further present into open court that heretofore, to wit, on the tenth day of May, A. D. 1905, one Cleve McNiel was duly and lawfully adjudged a bankrupt, within the meaning and purview of the acts of the Congress of the United States of America, by W. B. Paddock, referee in bankruptcy for the Ft. Worth Division of the Northern District of Texas; that such adjudication was had and took place upon the voluntary petition and request filed by him, the said Cleve McNiel, with the clerk of the United States District Court for the Northern District of Texas, on the tenth day of May, A. D. 1905, at the Ft. Worth Division of said district; that thereafter and in the regular proceedings of the administration of the said bankrupt estate one J. H. Wilson was duly and legally appointed trustee in bankruptcy for the estate of the said bankrupt, Cleve McNiel, and he, the said J. H. Wilson, so having been duly appointed, then and thereupon duly qualified as such trustee and entered into bond, which said qualification and bond was duly approved by W. B. Paddock, referee as aforesaid in bankruptcy for the said division of the said district; that the adjudication of him, the said Cleve McNiel, to be a bankrupt, and the appointment and qualification of the said J. H. Wilson as trustee in the said bankruptcy proceedings, was well known to him, the said Cleve McNiel, bankrupt, and he, the said Cleve McNiel, while such bankrupt, did then and there, to wit, in Hardeman county, state of Texas, and within the jurisdiction of this court, on the 15th day of July, A. D. 1905, unlawfully, knowingly, willfully, and fraudulently conceal from the said J. H. Wilson, his trustee as aforesaid, certain property belonging to the estate in bankruptcy of him, the said Cleve McNiel, bankrupt as aforesaid, which said property consisted of and was in fact the sum of two hundred and fifty dollars lawful current money of the United States of America, and of the value of two hundred and fifty dollars, the particular kinds and denominations of which are to the grand jurors unknown; that the said sum of money in fact belonged to the bankrupt estate of him, the said Cleve McNiel, and was in his hands and possession and under his control, and was concealed as aforesaid, within the venue aforesaid, and upon the date aforesaid, and in the manner aforesaid, by him, the said Cleve McNiel, from J. H. Wilson, his trustee in bankruptcy, while the same in fact belonged to his estate in bankruptcy, and while he, the said Cleve McNiel, was a bankrupt as aforesaid, all of which acts of him, the said Cleve McNiel, were contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

*Rehearing denied February 19, 1907.

On the trial of the case the defendant introduced the testimony of Duncan G. Smith, who was his attorney in the bankruptcy proceedings, and the said Smith testified in substance that he left Quanah on the night of May 9th, and arrived in Ft. Worth on the morning of May 10th, and filed and presented defendant's petition in bankruptcy to the referee, who entered the order adjudicating the defendant a bankrupt about 2 o'clock in the afternoon of May 10th. The witness then stated that he asked the referee what instructions he should give the defendant with reference to closing up his place of business. He was then asked what was his understanding of the instructions received by him from the referee. The attorney for the government objected to the witness stating what his understanding was as to what the referee told him about what instructions he could give to the bankrupt, McNiel, on the ground that any instructions he might give to the attorney of the bankrupt would not bind the government and would be no defense. The attorney of the defendant then stated that he expected to show by the witness that he (Smith) had filed the defendant's petition in bankruptcy with the referee and asked him what instructions he should give McNiel with reference to closing his business and turning over same to the official designated by the referee, to which the referee replied in substance, or the witness so understood, for defendant to keep his business open up to the regular closing time of May 10th and then close it up, and thereafter turn over said business to the proper official designated by the referee; that in pursuance of what the referee told him, or his understanding of the same, he (Smith) advised his client, the defendant McNeil, by wire in substance that he should keep his business open on May 10th up to the usual closing time, and then turn said business over to the proper official designated by the referee; and that it was in pursuance of such advice of his counsel that defendant ran his business on said night of May 10th. Defendant's attorney stated that he wished to introduce such testimony on the ground of the bankrupt's intent, and to show his good faith and lack of criminal intent in taking in money on the night of May 10th, and that under such instructions of his counsel that defendant might presume that such money did not belong to the bankrupt estate. To this testimony the attorney for the government again renewed his objection, on the ground that any instructions the referee might give to the attorney of the bankrupt would not bind the government and would be no defense. The court sustained the objection to all the testimony thus offered by defendant's attorney, to which action and ruling of the court the defendant then and there in open court excepted.

After conviction, a motion was made in arrest of judgment, mainly on the ground that the facts stated in the third count of the indictment did not constitute an offense against the laws of the United States, and the same was overruled. After sentence to the penitentiary for a period of 18 months, the plaintiff in error sued out this writ.

Marshall Spoonts, for plaintiff in error.
Wm. H. Atwell, U. S. Atty.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts). Only two assignments of error seem to be relied upon in this court:

1. That the court erred in rejecting the evidence of Attorney Smith as recited in the statement of the case. If it be conceded that, in a class of offenses similar to the one in hand, criminal intent may be negatived by showing that the accused, after full statement of facts to counsel, in committing or doing the act in question acted under the advice of counsel (as to which see Barnett v. State, 89 Ala. 170, 7 South. 414; United States v. Conner, 3 McLean, 573, Fed. Cas. No. 14,847; United States v. Stanley, 6 McLean, 409, Fed. Cas. No. 16,376), it cannot avail the plaintiff in error, because, from what was offered to be proved on the trial, to wit, that Attorney Smith advised

the plaintiff in error in substance that he should keep his business open up to the usual closing time, and then turn said business over to the proper official designated by the referee, there can be no legitimate inference or deduction that Attorney Smith advised his client that the money which he would receive for selling goods in the interim did not belong to the bankrupt estate and that he need not turn it over to the, proper official. If the plaintiff in error had been on trial on a charge of having unlawfully sold or transferred property belonging to his estate after he was adjudicated a bankrupt, the evidence offered might have been material. It is entirely consistent with Attorney Smith's instructions, as offered to be proved, that the proceeds of the goods sold, resulting from carrying on the business after the adjudication, were to be turned over to the proper official and not to be retained by the bankrupt. The rejection of Attorney Smith's evidence as offered was not erroneous.

2. The gist of the other assignment of error insisted upon is that, although the offense is charged in the language of the statute, reinforced by "unlawfully" and "willfully," yet the indictment is insufficient, because it does not specifically charge that the plaintiff in error knew that the assets which he concealed belonged to his estate in bankruptcy. To support this contention counsel rely on United States v. Carll, 105 U. S. 611, 26 L. Ed. 1135, to the effect that in an indictment upon the statute it is not sufficient to set forth the offense in the words of the statute, unless those words of themselves fully, directly, and expressly, without uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished, and the fact that the statute in question, read in the light of the common law and of other statutes on the like matter, enables the court to infer the intent of the Legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent. The Carll Case has been followed by the Supreme Court in many cases. See United States v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516, Evans v. United States, 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830, and Keck v. United States, 172 U. S. 434, 19 Sup. Ct. 254, 43 L. Ed. 505, all to the effect that all the ingredients of the offense are to be charged in the indictment, although the statute in its general or special description has omitted some of them.

But these cases are not exactly in point here, where the question is whether all the ingredients of the offense are sufficiently charged in the indictment, and particularly whether this indictment sufficiently charges that the accused knew that the money concealed belonged to his estate in bankruptcy. In Rosen v. United States, 161 U. S. 29, 16 Sup. Ct. 434, 40 L. Ed. 606, it was held that an indictment charging Rosen with unlawfully, willfully, and knowingly depositing obscene matter in the mails sufficiently charged him with the knowledge that the matter deposited was obscene. In Dunbar v. United States, 156 U. S. 194, 15 Sup. Ct. 325, 39 L. Ed. 390, it was held that when the charge is made that the defendant willfully, unlawfully, and knowingly, and with intent to defraud the revenues of the United States, smuggled and clandestinely introduced into the United States prepared opium,

it carries with it a direct averment that he knew that the duties were not fully paid. And see Keck v. United States, 172 U. S. 439, 19 Sup. Ct. 254, 43 L. Ed. 505. In Price v. United States, 165 U. S. 311, 17 Sup. Ct. 366, 41 L. Ed. 727, the court, citing and following the Rosen Case, held that in an indictment under section 3893, Rev. St. [U. S. Comp. St. 1901, p. 2658], it was sufficient to charge that the accused knowingly deposited, etc., a printed book and pamphlet, "the character of which is so obscene, lewd, and lascivious that said book would be offensive if set forth in full in this indictment," without any more specific allegation that the book was obscene. And the court says:

"This indictment is sufficient, because it does, in fact, contain a charge that the book was obscene, to the knowledge of the defendant, who knowingly and willfully, with such knowledge, deposited it in the mail, and thus violated the statute. No one, on reading the third and fifth counts of the indictment, could come to any other conclusion in regard to their meaning, and when this is the case an indictment is good enough."

So we say that the charge that the accused did unlawfully, knowingly, willfully, and fraudulently conceal from his trustee, etc., certain property belonging to the estate in bankruptcy, and which said property was in his hands and possession, etc., carries with it a sufficient averment that the accused knew that the property he was charged with concealing belonged to his estate in bankruptcy, and, further, that no one on reading the third count of the indictment in this case could come to any other conclusion in regard to its meaning, and when this is the case the indictment is good enough.

The judgment of the District Court is affirmed.