## RULOVITCH et al. v. UNITED STATES. *

(Circuit Court of Appeals, Third Circuit. January 3, 1923. Rehearing Denied February 19, 1923.)

### No. 2892.

1. **Conspiracy ☛43(5)—Averments of overt acts in indictment cannot aid charging part.**

In an indictment for conspiracy under Criminal Code, § 37 (Comp. St. § 10201), insufficiency of averment in the charging part cannot be aided by averments of overt acts.

2. **Conspiracy ☛43(6)—In indictment for conspiracy to commit an offense, such offense need be described only sufficiently to identify it.**

In an indictment under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to commit an offense, the offense which it is charged defendants conspired to commit need not be stated with the particularity that would be required in an indictment charging the offense itself, but only with such particularity as to identify it.

3. **Indictment and information ☛111(4)—Indictment for conspiracy to violate Prohibition Act held to sufficiently negative exceptions.**

In an indictment charging in separate counts conspiracy to "unlawfully possess," to "unlawfully transport," and to "unlawfully sell" intoxicating liquor prohibited by law, the words "unlawfully" sufficiently exclude the exceptional cases in which liquor may be lawfully possessed, transported, or sold, under National Prohibition Act, § 3.

4. **Criminal law ☛262—Right to plead to indictment is waived by going to trial without objection.**

Defendants, who, after the overruling of their demurrer, went to trial without being required to plead to the indictment, *held* to have waived the formality.

5. **Criminal law ☛261(1)—Conviction after denial of permission to plead held invalid.**

Conviction of defendants without pleas and after denial of their motion for leave to plead the general issue, and to file a special plea, on a trial over their objection, renewed at its close, *held* invalid.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Criminal prosecution by the United States against Peter Rulovitch and others. Judgment of conviction and defendants bring error. Affirmed as to some defendants, and reversed as to others.

Robert H. McCarter, of Newark, N. J., Thomas Brown, of Perth Amboy, N. J., and Thomas H. Hagerty, of New Brunswick, N. J., for plaintiffs in error.

Walter G. Winne, U. S. Atty., of Hackensack, N. J., and Frederic M. P. Pearse, Asst. U. S. Atty., of Newark, N. J.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The crimes with which the nine defendants were charged under the three counts of the indictment were conspiracies, formed at specified times and places, to commit offenses against the United States (R. S. § 5440, now Section 37 of the Criminal Code; Comp. St. § 10,201), that is, (1) "to unlawfully possess," (2) "to unlawfully transport," and (3) "to unlawfully sell intoxicating liq-

uors prohibited by law, containing more than one-half of one per cent. of alcohol by volume and being fit for use for beverage purposes," as indicated by the overt acts pleaded. All defendants were found guilty. After sentence they prosecuted this writ of error attacking here, as at the trial, the sufficiency of the indictment. The main question on review therefore is, whether the draftsman of the indictment brought the case within the law. What is the law?

[1] First, we should note the rule of criminal pleading that, under the cited conspiracy section of the Criminal Code, the averments of overt acts cannot aid any insufficiency of averments in the charging part of a count. The charging part must in itself and alone charge the offense with sufficient clearness to apprise the defendants of what they are called upon to meet and to identify the offense to commit which they are charged to have conspired. United States v. Britton, 108 U. S. 199, 2 Sup. Ct. 525, 27 L. Ed. 703; United States v. Rabinowich, 238 U. S. 78, 35 Sup. Ct. 682, 59 L. Ed. 1211. Next, we should observe that the crime charged against the defendants in each count was not a violation of the National Prohibition Act (41 Stat. 305) but was a conspiracy to violate that act. Therefore we must view the counts of the indictment as framed not under the liberal provisions of that act, and particularly not under Section 32 thereof, but under the Section of the Criminal Code prescribing the crime of conspiracy to violate generally a law of the United States.

With these much discussed aspects of the case out of the way, we come to the question of the sufficiency of the charging part of the counts. On this phase of the case the opposing parties cited a wide range of authorities, indicating quite clearly the trend of judicial decisions under changing conditions of law. This subject was discussed by Judge McPherson in Tapack v. United States, 220 Fed. 445, 447, 137 C. C. A. 39, 41 (C. C. A. 3d). What he said is peculiarly applicable to the question now under discussion. It is this:

"In earlier days, when excellent reasons existed for construing an indictment strictly so as to favor life and liberty, it is probable enough that such an indictment as this might have been held deficient in precise statement; and, indeed, some comparatively recent decisions still reflect something of the earlier spirit. But there can be no doubt that the prevailing tendency now, both in statute law and in decision, is to be satisfied with substance rather than to insist upon rigid adherence to form; an indictment will be held good if, it substantially charge the particular offense for which the defendant is about to be, or has already been, tried. Burton v. U. S., 202 U. S. 344, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362; Dunbar v. U. S., 156 U. S. 195, 15 Sup. Ct. 325, 39 L. Ed. 390; McNicl v. U. S., 150 Fed. 82, 80 C. C. A. 36; State v. Stein, 48 Minn. 466, 51 N. W. 474; State v. Smith, 63 Vt. 201, 22 Atl. 604; Worsham v. Murchison, 66 Ga. 715."

The Supreme Court very recently expressed the same view by saying:

"It is enough * * * that the offense be described with sufficient clearness to show a violation of law, and to enable the accused to know the nature and cause of the accusation and to plead the judgment, if one be rendered, in bar of further prosecution for the same offense." United States v. Behrman, 258 U. S. 280, 42 Sup. Ct. 303, 66 L. Ed. ——.

[2] Applying the same rule to the offense of conspiracy, charged under what is now Section 37 of the Criminal Code, the Supreme Court

in Williamson v. United States, 207 U. S. 425, 447, 28 Sup. Ct. 163, 171 (52 L. Ed. 278) said:

"But in a charge of conspiracy the conspiracy is the gist of the crime, and certainty, to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is requisite in stating the object of the conspiracy."

Quoting this terse statement, the Circuit Court of Appeals for the Eighth Circuit, in Anderson v. United States, 260 Fed. 557, 558, 171 C. C. A. 341, 342, defined the rule for charging such an offense, as follows:

"The general rule is that where conspiracy is made a statutory offense, when entered into for the purpose of committing a certain specified offense, the offense may be described in the words of the statute which creates it, if the statute sets out fully and without uncertainty or ambiguity the elements necessary to constitute the offense. If, however, the statute employs broad and comprehensive language descriptive of the general nature of the offense denounced, the use of such language is insufficient. 12 C. J. 615; Pettibone v. United States, 148 U. S. 197, 13 Sup. Ct. 542, 37 L. Ed. 419; United States v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516; United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; United States v. Britton, 108 U. S. 205, 2 Sup. Ct. 531, 27 L. Ed. 698. As the conspiracy is the gist of the offense, *it is undoubtedly true that the offense which it is charged the defendant conspired to commit need not be stated with that particularity that would be required in an indictment charging the offense itself.* Brooks v. United States, 146 Fed. 223, 76 C. C. A. 581; Lemon v. United States, 164 Fed. 953, 90 C. C. A. 617; Brown v. United States, 143 Fed. 60, 74 C. C. A. 214; Gould v. United States, 209 Fed. 730, 126 C. C. A. 454; Hyde v. United States, 198 Fed. 610, 119 C. C. A. 493. Still, as was said in Williamson v. United States, supra, the offense which the defendants conspired to commit must be *identified.*"

[3] Dealing for the moment not with conspiracy, which is the gist of the offense charged in each count of the indictment, but with the identification of the offense to commit which it is alleged the conspiracy was formed, and remembering that under the rules of pleading the latter offense does not have to be stated with particularity beyond what is necessary to identify it, the plaintiffs in error maintain there is in each count of the indictment a complete lack of identification of the objective offense charged, because in describing it there is nothing in the count which, by process of exclusion, distinguishes the offense charged from acts which, by the terms of the National Prohibition Act, are expressly made lawful, and that, in consequence, they may have been charged with doing a perfectly lawful thing. Or, stated with particularity, the plaintiffs in error, relying upon the provision of Section 3 of the National Prohibition Act that, "No person shall * * * sell * * * transport * * * or possess any intoxicating liquor *except* as authorized by this act," and upon another paragraph of the same section which provides that, "Liquor for non-beverage purposes and wine for sacramental purposes may be manufactured * * * sold * * * and possessed," and also upon other provisions of the act which make the handling of intoxicating liquor with permits lawful, maintain that the counts of the indictment do not specify, or identify, the objective offenses intended by the conspiracies so that transactions admittedly lawful may be excepted or excluded, and that, in

consequence, they may be charged with acts which, being permitted by the statute, are lawful.

We do not find substance in this contention, mainly because there is a rule of criminal pleading applicable in declaring on a statute containing an exception, which provides that:

"The rule applicable to such statutes is that it is enough to charge facts sufficient to show that the accused is not within the exception." United States v. Behrman, 258 U. S. 280, 42 Sup. Ct. 303, 66 L. Ed. ——; and United States v. Cook, 17 Wall. 168, 173 (21 L. Ed. 538).

Certainly it is not necessary in charging conspiracy to commit the offense of unlawfully selling liquor to aver that this unlawful objective offense does not come within the exception which makes the sale of liquor lawful under certain circumstances. In charging that the object of the conspiracy in each of the three counts was, respectively, the unlawful possession, unlawful transportation and unlawful sale of liquor, the pleader has by the term "unlawful" excepted like transactions which under different conditions are lawful. Therefore it seems to us that he has clearly identified the offense which, in each count, was the object of the conspiracy by charging it to be such possession, transportation, or sale of intoxicating liquor as is prohibited by law, and therefore only such as is unlawful. The pleader was not required to plead as exceptions the lawful sale of "liquor * * * for nonbeverage purposes" or of "wine for sacramental purposes," for such sales are not unlawful. Nor was he required to plead that the conspiracy did not extend to a sale of liquor with a permit because a sale with a permit is not prohibited by law. He had only to describe the unlawful object of the conspiracy, namely; a sale of liquor in the way which the statute has declared unlawful. And this we think he did. Accordingly, we find no error committed by the trial court in refusing the motions to quash the indictment and arrest the judgment.

The facts to which the remaining assignments of error are directed were briefly these:

Early Sunday morning, November 14, 1920, 588 cases of whisky and 21 barrels of grain alcohol were stolen from freight cars in the yards of the Pennsylvania Railroad Company at Newark, New Jersey. A little later on the same morning trucks containing this liquor were at a farm near Metuchen, New Jersey. One of the trucks had broken down. Two men, described as "strange men," drove to a place near New Brunswick known at "The Brook," consisting of a store, garage and saloon, and disposed of the liquors in a manner which implicated Bauries, Moon, Schill, Miller, Browne and Brauer (defendants below) in the larceny. These men were tried on an indictment charging them by one count with conspiracy to steal the whisky and alcohol, part of an interstate shipment, and by other counts with receiving and possessing the same as stolen goods. All the defendants named in that indictment went on the stand and, while admitting they had come into possession of the liquors and had transported them from a farm on the north side of the Raritan River to a farm on the other side beyond the city of New Brunswick, where it was shown by other witnesses they had disposed of them, they denied that they took part in the theft

or that they knew the goods had been stolen. Rulovitch, Revolinsky, and Gadek (the remaining defendants below) appeared as witnesses and testified that they had introduced the strange men to the defendant Bauries, that Bauries had bought the liquor and that they had loaned him $27,000 with which to purchase it. On this testimony the six defendants in the first trial were acquitted and immediately on the strength of the admissions made by them as to the possession and transportation of the liquor and of the admissions made by Rulovitch, Revolinsky and Gadek that they had furnished the money with which the liquor was bought, this indictment was found against the nine men charging them by three counts with conspiracy to violate the National Prohibition Law in the manner described. Thus it appears that of the nine defendants, six had been previously tried under another indictment and acquitted and that they, with three others, were joined in the indictment of the instant case, subjecting them to two trials for separate offenses arising out of the same facts.

[4, 5] On January 3, 1922, all the defendants were arraigned and pleaded "not guilty." On January 31, 1922, they were given leave to withdraw their pleas and demur to the indictment. Demurrers were filed and, on March 29, 1922, were overruled. On the same day the case was called for trial. All the defendants were in court, but counsel for the first six, being otherwise professionally engaged, was absent. On this ground an effort to postpone the trial was made. The court, however, ordered the trial to proceed, appointing counsel for the three new defendants to act as counsel for the six old defendants. After the trial had been in progress for a time counsel for the six defendants appeared and called the court's attention to the fact that since the nine defendants had withdrawn their pleas of "not guilty" preliminary to the filing of demurrers and since the demurrers had been heard and overruled none of them had been called to plead and that, neither the six whom he represented nor the three who were represented by other counsel had pleaded in the case then on trial. He moved that the trial be stopped; that the testimony given (which was only the reading of the testimony of the previous trial) be stricken out; and that these defendants be allowed to plead. In this motion counsel for the remaining defendants concurred. The court made no distinction between the two sets of defendants and regarded their failure to plead after demurrer as a waiver of their right to plead and, accordingly, denied the motion. A like motion was made by counsel for the original six at the end of the government's case, and still again at the conclusion of the trial, based on the contention that as no pleas had been filed, no issue had been framed, and that, in consequence, the defendants were being illegally tried, and based also on a right claimed by these defendants to plead, not only the general issue, but a special plea of autrefois acquit which counsel had prepared and had in court ready to file. These motions were denied and the case proceeded to the end. We are now confronted with the question whether the conviction of all the defendants on the verdict was illegal for this reason.

The law on this question is settled. The case of Crain v. United States, 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097, proceeded to

verdict without a plea and without objection by the defendant. The Supreme Court held:

"That a plea for the indictment is necessary before the trial can be properly commenced, and that unless this fact appears affirmatively from the record the judgment cannot be sustained."

Three justices dissented, being of opinion that the defendant—

"ought to be held to have waived that which under the circumstances would have been a wholly unimportant formality. A waiver ought to be conclusively implied where the parties had proceeded as if the defendant had been duly arraigned, and a formal plea of not guilty had been interposed, and where there was no objection made on account of its absence until, as in this case, the record was brought to this court for review. It would be inconsistent with the due administration of justice to permit a defendant under such circumstances to lie by, say nothing as to such an objection, and then for the first time urge it in this court."

Later, there arose the case of Garland v. Washington, 232 U. S. 642, 34 Sup. Ct. 456, 58 L. Ed. 772, where no plea was filed; the trial proceeded without objection; and after conviction the judgment was brought to the Supreme Court for reversal on authority of the Crain Case. In the Garland Case the Supreme Court expressly overruled its decision in the Crain Case and adopted the dissenting opinion in that case as the proper view of the law. Applying the law of the Garland Case, it is perfectly clear that as to some of the defendants the case at bar comes within the exception to the rule which the Supreme Court there laid down. The six original defendants did not, by inaction, waive their right to plead. On the contrary they offered to plead both the general issue and a special plea in bar of the action, and, asserting their right so to plead, repeatedly made objection to the trial proceeding without their pleas being accepted. By the court's refusal to allow them to plead, they were denied a full opportunity to be heard in that they were in fact deprived of the right to make defense under their proposed plea of autrefois acquit. We think they had a right to plead and to be heard on that defense without regard to whether, on cursory view, it lacked substance.

Therefore, we are of opinion that the trial as to these six defendants was not valid. With respect to them we subscribe to the views of the Supreme Court expressed by Mr. Justice Harlan in Crain v. United States, supra, that they may be guilty, and may deserve the full punishment imposed upon them by the sentence of the trial court. But it were better that they should escape altogether than that this court should sustain a judgment of conviction of a crime where the record clearly shows that the trial was not valid.

As to Rulovitch, Revolinsky and Gadek, however, their situation falls not within the exception to the rule of Garland v. Washington but precisely within the rule itself, for these defendants, entering upon the trial without a plea, objected only when objection for the other defendants was made. This was a tardy assertion of any right they may have had. Until then they did lie by and say nothing. By the court's denial of their motion for leave to plead they were deprived of no right or privilege in making defense, nor were they prejudiced,

as were the other defendants, by lack of opportunity to plead former acquittal because, not having been defendants at the first trial, that defense was not open to them.

Therefore, finding no other errors in the proceedings and judgment below, we affirm the judgment as to Rulovitch, Revolinsky and Gadek and reverse it as to the remaining defendants with the instruction that they be awarded a new trial.