### UNITED STATES v. McCORMICK.
#### No. 195.

Circuit Court of Appeals, Second Circuit.
Dec. 4, 1933.

868

John A. Bolles, of New York City, for appellant.

George Z. Medalie, U. S. Atty., of New York City (Thomas E. Dewey and David Paley, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On December 29, 1931, the defendant filed in the office of the collector of internal revenue for the Second district, New York, income tax returns for the years 1929 and 1930 in addition to returns for other years, and paid a tax of $20,000 and in addition thereto a 25 per cent. penalty, as assessed. He had not theretofore filed any federal returns for the income taxes in question, which should have been filed on or before the 15th day of March following each calendar year. Section 53 (a) of the Revenue Act of 1928 (26 USCA § 2053 (a) sets forth the time for filing a return as follows:

"*Time for Filing.*—(1) General rule. Returns made on the basis of the calendar year shall be made on or before the 15th day of March following the close of the calendar year. * * *"

In the autumn of 1931 the defendant was summoned in the Seabury Investigation, and, having read in the newspapers that people were being investigated, decided that he had better look after his own affairs. Consequently he went to the internal revenue office and had an interview with Henry Schillinger, a deputy collector, who made out his income tax returns from information then given by the defendant for the years 1923 to 1930, inclusive. After the tax was computed, the defendant gave Schillinger a check for the amount of the taxes assessed and for a penalty of 25 per cent. which was added to the taxes, under the instructions of the collector. After the defendant had filed these returns and paid the tax, he was indicted, on April 12, 1932, for willfully failing to file income tax returns, and was convicted under counts 5 and 7 of the indictment for such failure to file returns for the years 1929 and 1930, respectively. Section 146 (a) of the Revenue Act of 1928 (26 USCA § 2146 (a) provides that:

"Any person required under this title to pay any tax, or required by law or regulations made under authority thereof to make a return, * * * who willfully fails to pay such tax, make such return * * * at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor."

In order to sustain the conviction, it was necessary for the government to establish: (1) That the defendant was a person required by law to make a return for each of the years in question; (2) that he failed to file a return for each of those years at the time required by law; (3) that the failure to file each of such returns was willful.

The defendant contends that he should have been acquitted because he voluntarily filed delinquent returns. He says this is so, even though he was a person required to make a return on or before March 15th following each of the calendar years. This contention is in the face of the provision of section 146 (a) of the Revenue Act of 1928 (26 USCA § 2146 (a), which declares a person who willfully fails to make a return at the time required by law guilty of a misdemeanor "in addition to other penalties provided by law." It is argued that the payment here was a compromise of all governmental claims, civil and criminal, and such decisions as Rau v. United States (C. C. A.) 260 F. 131, Oliver v. United States (C. C. A.) 267 F. 544, and Willingham v. United States (C. C. A.) 208 F. 137, are cited to show that the payment here was a bar to subsequent criminal prosecution. But we find nothing in the present record to indicate that the payment was made to compromise claims for criminal liability. The most that can be said for defendant on account of his disclosure and payment of taxes is that such acts tended to show innocence. The argument is stronger that they only showed a desire to place himself in a safer position when it had become certain that his illegal acts were about to be discovered through an examination in the Seabury Investigation.

Under the provisions of section 51 (a) (3) of the Revenue Act (26 USCA § 2051 (a) (3), a return must be made by "(3) Every individual having a gross income for the taxable year of $5,000 or over, regardless of the amount of his net income." Undoubtedly the defendant was a person required by law to make a return.

The evidence indicates that McCormick

had savings banks' deposits yielding $9,108.69 interest in 1929, and $10,483.17 in 1930. There was proof based on these items alone that returns were required for each year covered by counts 5 and 7 of the indictment. The duty to file such returns on or before March 15th following the close of each calendar year is made plain by section 53 (a) of the Revenue Act of 1928 (26 USCA § 2053 (a), already quoted. It is undisputed that no returns were filed for the periods embraced in these counts.

The only question seriously argued on the merits is whether the failure to file the returns was willful.

The defendant was deputy city clerk for the city of New York, and had a salary of $8,500 per annum. There was testimony that, in addition to his salary, he received the following moneys, claimed by the government to be income, during the years 1929 and 1930:

| | 1929 Approximately | 1930 Approximately |
|---|---|---|
| (a) Moneys received from bridegrooms for performing the marriage ceremony as deputy city clerk for the city of New York. | $16,000 (fol. 987) | $16,000 (fol. 987) |
| (b) Moneys received as interest on 34 savings bank accounts. | $9,108.69 (fols. 594, 595) | $10,483.17 (fol. 599) |
| (c) Moneys received for work done as the leader of a political district organization | $24,000 (fol. 602) | $13,000 (fol. 602) |
| (d) Moneys received from friends for services rendered in connection with the "looking after" fire department violations | | |
| (e) Interest on $20,000, mortgage on premises, 575 West 152d street | $ 612.50 (fol. 455) | $ 1,162.50 (fol. 457) |

It was a duty of the defendant to perform civil marriages. Customarily, after a couple had paid a regular fee of $2, they were brought into the so-called "chapel," where McCormick sat behind a desk, in front of which the couple stood. He would read to them, quickly, a kind of ritual, and, after they were married and he had signed the marriage certificate, he would open a drawer in his desk which contained a mass of bills that had been contributed by bridegrooms—some 20's, some 10's, and some of smaller amounts. According to the testimony offered by the government, he would at times merely look toward the bills, holding the marriage certificate, and wait for a contribution; at other times he would say to the bridegroom, "It is up to you"; at other times, as McCormick waited, holding the certificate, the bridegroom would ask if there was any charge, and McCormick would say, "Whatever you feel like." On occasions, when the bridegroom volunteered nothing and demanded his certificate, the certificate would be turned over, but McCormick would call the bridegroom a "cheap skate." On one occasion, where a bridegroom only paid a dollar, McCormick commented on his stinginess. He admitted on the stand that he received contributions from more than half the bridegrooms, and they averaged in the course of a year "around $16,000." It is suggested that these contributions were in the nature of gifts, and, under section 213 (b) (3) of the Revenue Act 1926 (26 USCA § 954 (b) (3), were not to be included in gross income. While perhaps there was no consideration (lawful or unlawful) for these payments, there was evidence that they could not be regarded as voluntary gifts, for the contributions were made in order to obtain the marriage certificates promptly and without criticism by McCormick. Many of the payments were practically extorted in order that the married couples might get their certificates at once and avoid the embarrassment of criticism for stinginess. We said in Weagant v. Bowers, 57 F.(2d) 679, at page 682, that mere absence of a legal consideration or duty to pay does not make a payment a gift within the meaning of the Revenue Act; that "an intention to make a gift must be established."

The defendant sought to show that the failure to make any return of the contributions from bridegrooms was not willful because he had consulted a Congressman and two lawyers, who were dead at the time of the trial. Not only do the conversations depend upon McCormick's unsupported evidence, but the defense sought to be made likewise must rest on his own good faith in the matter and a finding by the jury that he really believed that the contributions, none of which was a lawful fee, were mere gifts and not exactions extorted through fear on the part of the married couples that they would not get their certificates or that they would be exposed to ridicule if they failed to contribute. There was no attempt to show that McCormick's method of securing these contributions was disclosed to the persons he consulted as to whether they should be returned as income.

An excuse for not returning interest on the savings bank accounts was founded upon a claim that Daly (formerly comptroller of the Emigrant Industrial Savings Bank), who was not a lawyer, and is not now living,

said to the defendant in a restaurant that interest was not taxable until entered in the depositor's passbook. McCormick's good faith in regard to these items is subject to even graver doubt than in the case of the marriage contributions, and was certainly a question for the jury.

There was not the slightest attempt to show that any one advised the defendant that moneys received for looking after fire department violations for friends, and balances of campaign contributions which he received as district leader, were gifts, and not payments for services, and it goes without saying that the mortgage interest which he neglected to return was the most ordinary sort of income.

The defendant admitted that during years prior to 1929 he was receiving an annual salary of $5,500 in his father's business in carriage and automobile trimmings, and that he never made any return of this to the federal or state governments. Indeed, he never made a return to the state government of anything except his salary as deputy clerk. This was taxable by the state, and, as the receipt of it was well known, ordinary prudence required a return to the state tax commission.

It seems entirely clear from the foregoing that the defendant had a large taxable income and that there was ample evidence that the failure to return it was willful. The defendant's claim that he was innocent of wrongful intent because he had made returns and paid the tax and penalties prior to the indictment was a matter for the consideration of the jury. It was its business to determine whether making returns and paying taxes when faced with examination in the Seabury investigation showed that McCormick had an innocent intent when he failed to make returns at the times they were originally due.

■ There remain four objections to the charge of the judge. The first is that he did not instruct the jury as to the intent of the defendant, i. e., whether his failure to file returns was "wilful" or not. We think this criticism without merit. The jury was informed that any person required by law to pay a tax or make a return "who wilfully fails to pay such taxes or make a return" was guilty. How a jury could suppose it could convict the defendant if not satisfied that he had "wilfully" failed to make a return we cannot imagine.

■ The next objection was aimed at the charge, and is as follows:

"Mr. Bolles: * * * I respectfully except to that portion of the charge which I think I had before your Honor to the effect that if the defendant fortified either by legal advice or on other reasonable grounds felt that any of the items of his income including the bank interest were not taxable by reason of the manner in which—

"The Court: They may take that into consideration as bearing upon the defendant's good faith and intention.

"Mr. Bolles: That is they may take that into consideration?

"The Court: Yes.

"Mr. Bolles: And your Honor will charge as I request?

"The Court: When a man goes to his attorney and relates a state of affairs he must be honest with his attorney and give him the full facts.

"Mr. Bolles: And if he believes the advice given by his attorney and relies on that then he cannot be guilty of wilful failure." Record, folios 1097, 1098.

The judge said that the jury might take into consideration legal advice as bearing upon the defendant's good faith, and added that he must give the attorney the full facts. Commonwealth v. Bradford, 50 Mass. (9 Metc.) 268, at page 272; United States v. Conner, Fed. Cas. No. 14,847. He then was asked to instruct the jury that, if the defendant believed the advice, he would not be guilty of willful failure. But it was not claimed that the defendant had legal advice as to any items of income except the marriage fees, and a charge that, if he believed the advice given him by his attorney, he would not be guilty of willful failure to file his return, would have been erroneous because it would have ignored his failure to file a return of the greater part of his income.

■ The same answer should be made to the exception to the failure to charge the following:

"I ask your Honor to further charge that 'if the defendant believed on reasonable grounds that the income received by him from his political organization, campaign funds, or gifts, after services rendered—if he reasonably believes they are not taxable, then he cannot be guilty of wilful failure to file.'" Folios 1100, 1101.

This request eliminated income received from the savings bank accounts which alone was sufficient to require a return, and was already covered generally by the instruction that the statute required the failure to be "wilful."

The fourth objection to the charge was as follows:

" \* \* \* If the defendant failed to file tax returns upon legal advice that his income was not taxable, and thereafter voluntarily filed returns and paid the full tax, that the jury must find him not guilty of wilfully neglecting to file returns." Folios 1033, 1034.

This last request not only failed to state that the defendant had made full disclosure of the facts to an attorney, but ignored the additional fact that there was no testimony that he had ever been advised as to anything except the marriage fees.

The evidence to show the defendant's guilt was overwhelming, and we find no error in the trial.

Judgment affirmed.