Alexander **BISNO**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 17239.

United States Court of Appeals Ninth Circuit.

Nov. 21, 1961.

Rehearing Denied Jan. 31, 1962.

Ronald E. Landers and Harvey R. Gerber, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S., Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Division, Robert E. Hinerfeld, Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

Appellant, hereafter referred to as Bisno, was indicted on a single count of knowingly and fraudulently concealing from a trustee in bankruptcy property belonging to a bankrupt estate in violation of Title 18 U.S.C.A. Section 152. This section provides, in pertinent part:

> Whoever knowingly and fraudulently conceals from the trustee charged with the control or custody of property in any bankruptcy proceeding, any property belonging to the estate of a bankrupt shall be fined or imprisoned or both.

The indictment arose out of bankruptcy proceedings against Bisno which were commenced upon the filing of an in-

voluntary bankruptcy petition against him on April 5, 1956, in the United States District Court for the Southern District of California, Central Division. Bisno was adjudicated a bankrupt on April 26, 1956. On May 28, 1956, a trustee was appointed. On June 4, 1956, Bisno filed a Schedule and a Statement of Affairs purporting to list all his assets and liabilities. A Supplemental Statement of Affairs was filed in September, 1957. The indictment lists ten specific items of property allegedly belonging to his bankrupt estate which Bisno allegedly knowingly and fraudulently concealed from the trustee of said estate. Responsive to Bisno's demand, the Government filed a Bill of Particulars more specifically describing and elaborating on the ten specific items of property alleged in the indictment to have been concealed.

In Schedule B of the original schedule of affairs filed on June 4, 1956, appellant listed as his total assets: (1) certain interests in real estate; (2) various enumerated negotiable and non-negotiable interests and securities; (3) office furniture and fixtures, subject to a $5000 chattel mortgage to one Millie Sterett; (4) $17,270 in debts due on open accounts; and (5) various unliquidated claims. Bisno listed under the items in the schedule for cash on hand and deposits of money in banks and elsewhere "none." The supplemental schedule filed in September, 1957, listed no cash on hand or bank deposits.

As alleged in the indictment the concealed items of property are: (1) approximately $45,000; (2) a loan receivable from Mildred Corvino in the sum of $8,200; (3) Bisno's interest in a note in the sum of $28,000 by Wilbur Dow and Wilma Dow, dated August 13, 1955, and his interest in a trust deed upon an apartment building in Las Vegas, Nevada, which trust deed was security for the payment of said note; (4) Bisno's interest in a parcel of land known as Sunset Manor in Las Vegas, Nevada, which interest had an approximate value of $8,000; (5) a chattel mortgage in the sum of $35,000 on the furniture and fixtures of the Moulin Rouge Hotel in Las Vegas, Nevada; (6) a note of the Exeter Hotel in the sum of $2,000 dated December 20, 1955, payable to Sally Bisno; (7) a cashier's check in the sum of $2,500, dated December 29, 1955, drawn on the Bank of America, Beverly Drive and Wilshire Branch, payable to "Al Bisno or Sally Bisno"; (8) 56 shares of stock, to-wit, 35 shares in Middle River Manor, Inc., and 21 shares in Riverdale Apartment, Inc., which stock was worth approximately $33,200.00; (9) furniture and fixtures at 241 South Beverly Drive, Beverly Hills, California, which furniture and fixtures had a value of approximately $3,000.00; and (10) a brokerage commission and interest in the sum of 2% per annum of the unpaid balance on a $100,000 investment in the Kimball Building, Boston, Massachusetts.

The case was tried by a jury, which returned a verdict of guilty of the one offense set forth in the indictment. Bisno appeals from the judgment of conviction which followed.

We will first consider Bisno's contention that the evidence is insufficient to sustain the conviction. While the indictment lists ten specific items of property which Bisno allegedly concealed, it is settled in this circuit that the fact that several different items of property are concealed does not multiply the offenses even though the concealment of any one of the items standing alone will constitute the offense denounced by the statute. Edwards v. United States, 265 F.2d 302 (9th Cir., 1959). In view of such rule of law we will first consider the sufficiency of the evidence as it relates to the first item of property described in the indictment, to-wit, the sum of approximately $45,000. In respect to this item, Item A in the bill of particulars furnished by the Government alleges that between January 1, 1956, and April 5, 1956, Bisno received $107,404.04 and disbursed from said amount only $60,004.18, leaving an amount of $47,399.86 unaccounted for anywhere in the schedules. In proof of this item, the Government offered the testimony of Grant Earl, a F.B.I. agent who

specializes in accounting. Earl testified that he arrived at the sum of $47,399.86 after examining Bisno's accounting books and cancelled checks and following several conferences with Bisno. Earl testified to his computations item by item and indicated precisely how he arrived at the above figures.

From the $107,404.04 which Earl computed to be the total amount received by Bisno from January 1, 1956, to April 5, 1956, $92,504.18 is evidenced not only by book entries but also by cancelled checks or photostatic copies thereof. These checks consist of: three checks totaling $45,000, issued by one Marks in late December, 1955, payable to Bisno and endorsed by him; one check for $11,000 issued by one Wolonow in late December, 1955, payable to Bisno and endorsed by him; one check for $36,504.18 marked as payable out of an escrow held by the Long Beach National Bank dated February 15, 1956, payable to Anne Abrams, a nominee of Bisno, endorsed over to Combined Television Pictures, Inc., a corporation controlled by Bisno and bearing Bisno's endorsement. The remaining items making up the total arrived at by Earl are evidenced by book entries and memoranda.

An examination of the $60,004 total allowed for disbursements shows liberality toward Bisno. Thus, from the $45,000 received from Marks, a disbursement of $23,500 back to Marks from Bisno was allowed although evidenced by neither a book entry nor a check but only by statements of Marks and Bisno. From the escrow check of $36,504.18, $20,504.18 shown by a book entry to have gone into Bisno's business was allowed as a disbursement. Also $8,000 in cashiers' checks was allowed as a disbursement to Jules Bisno. This item reappears in connection with Item C alleged in the bill of particulars. Eight thousand dollars in cashiers' checks was allowed as a disbursement to Sally Bisno, wife of Bisno. This item reappears in connection with Items F and G, alleged in the bill of particulars.

Bisno's first contention is that his accounting records are so unreliable that the testimony of Earl must be completely discounted. In support of such contention our attention is directed to certain isolated remarks made by Earl suggesting deficiencies in Bisno's accounting methods and testimony of similar import by one Finkelman, who was Bisno's accountant up to 1955. We find this contention to be without merit. Earl's testimony stands unrebutted in the record. There is abundant evidence in the record to show that Bisno received and disbursed the amounts alleged by the Government in the bill of particulars. The difference between such amounts is a figure rounded off by the Government in the indictment at $45,000 which Bisno received and did not disburse. Such amount does not appear on the schedules and no explanation appears as to where such amount went except Bisno's unsupported estimate of gambling losses. Even under such estimate such losses would not total over $4050 ($300 per week for 13½ weeks). The evidence showed receipt by Bisno of a substantial amount of money in excess of disbursements immediately prior to bankruptcy, such amount being far in excess of the amount which might reasonably be expected to be expended for living expenses. No explanation appears as to where the money went. From such evidence the jury is entitled to infer that such amount was in the possession of Bisno and by him knowingly and fraudulently concealed from the trustee. Noell v. United States, 183 F.2d 334 (9th Cir.1950). See also Arine v. United States, 10 F.2d 778 (9th Cir.1926); United States v. Wodiska, 147 F.2d 38 (2nd Cir.1945); Cohen v. United States, 67 F.2d 449 (4th Cir.1933). Bisno's attack on the foundation laid for Earl's testimony goes to the weight and not its admissibility.

In our view the evidence above reviewed, standing alone, is sufficient to sustain Bisno's conviction of the single offense of knowingly and fraudulently concealing from the trustee property belonging to the bankrupt estate.

Briefs filed on behalf of Bisno are redundant with charges of "misconduct," "over-prosecution" and "prejudice." Bisno's contention is that the Government pictured as fraudulent, transactions "normal" to a big time real estate promoter, and by reference to "irrelevant" transactions, painted an aura of fraud around Bisno which distracted an "unsophisticated" jury from the specific issues before it, thus leading to a verdict "inflamed by passion and prejudice."

■ We find Bisno's charges of "misconduct and prejudice" unfounded. The facts in the case are complex. The trial lasted five weeks. The exhibits are voluminous and the transcript of testimony totals over 2,000 pages. The remarks of Government counsel were not on the whole inflammatory or over-zealous. Those few remarks, diligently extracted from separate places in the transcript, which might be characterized as improper clearly come within the following admonitions of the Supreme Court, which are particularly appropriate:

"If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since, in the ardor of advocacy and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation." Dunlop v. United States, 165 U.S. 486, 498, 17 S.Ct. 375, 379, 41 L.Ed. 799 (1897).

"The trial was long and the incidents relied on by petitioners few. We must guard against the magnification on appeal of instances which were of little importance in their setting." Glasser v. United States, 315 U.S. 60, 83, 62 S.Ct. 457, 471, 86 L.Ed. 680 (1942).

Bisno further contends that the Government was guilty of "over-prosecution" and that Bisno was "prejudiced" by a mass of irrelevant testimony which, by sheer weight, crushed Bisno and which testimony could not be followed and analyzed by a jury composed of persons in the ordinary walks of life.

In light of such contentions, we have made a painstaking review of the record relating to the nine remaining items of property which the Government contends were likewise knowingly and fraudulently concealed. From such review, we are satisfied that the evidence offered by the Government relating to such other items of property was relevant, material, and abundantly supports the charges contained in the indictment and the allegations in the bill of particulars.

■ It appears to us that it would unnecessarily extend this opinion to an undue length, were we to summarize all of the evidence which abundantly substantiates such charges. The evidence consists of the testimony of numerous witnesses, voluminous exhibits in the form of Bisno's books of account, cancelled checks, correspondence and legal documents all taken from Bisno's business files, and all pertaining to the transactions alleged in the indictment and bill of particulars. The totality of the evidence relating to each transaction, when pieced together, convincingly establishes the commission of the offense charged in respect to each transaction.

In our examination of the evidence, we have noticed some recurring patterns which merit comment. Bisno did not have legal title to several of the specified items of property on the date of bankruptcy or when his schedules were filed, yet by diligent and assiduous tracing of funds, the Government's evidence established that such items, after bankruptcy, wound up in one form or another in Bisno, who dealt through nominees. These nominees testified that they were dummies, had no interest in the items to which they held legal title and acted only in accordance with Bisno's instructions. The evidence discloses that Bisno directed every act of such nominees and supervised and negotiated transactions in relation to such items so that such items would arrive at the places and in the

forms which suited his purposes. In respect to several items of concealed property, Bisno made only partial disclosure. Such failure to make full disclosure resulted in concealment of Bisno's interest in such items and would have led a less suspicious trustee to refrain from further investigation.

Our review of the record has laid to rest any merit in Bisno's contention that the Government fatally contaminated the entire case by introduction of irrelevant and prejudicial matters beyond the scope of the indictment and the bill of particulars. To our minds the evidence clearly shows that Bisno embarked on a comprehensive scheme to conceal a substantial part of his assets from the trustee by endeavoring to make it appear that such assets belonged not to him but to others. Finally, our view of the evidence completely destroys the principal defense advanced by Bisno at the trial, which was that he did the best he could without accounting help to disclose what remained of a shattered business structure and that any items of property which he may have failed to disclose resulted from inadvertence and were not knowingly and fraudulently concealed.

We will now consider other contentions raised on the appeal, which may be summarized as follows: That the District Court committed prejudicial error: (1) in receiving in evidence over Bisno's objections Government's exhibits 58A–65A inclusive; (2) in the refusal to give certain instructions requested by Bisno; (3) in refusing to require the return of a special verdict by the jury in respect to each of the ten transactions set forth in the indictment. These specifications will be considered ad seriatim.

The exhibits 58A–65A consist of correspondence files of Bisno and formed a part of his business records which were acquired by the trustee in bankruptcy by operation of law. Title 11 U.S.C.A. § 110, sub. a provides in pertinent parts that the trustee of the estate of a bankrupt shall be vested by operation of law with the title of the bankrupt as of the date of filing of the petition initiating a bankruptcy proceeding to all documents wherever located relating to property. A "document" as used in the Bankruptcy Act shall include "any book, deed, or instrument in writing." Title 11 U.S.C.A. § 1(13). See also Babbitt v. Dutcher, 216 U.S. 102, 30 S.Ct. 372, 54 L.Ed. 402 (1910). A foundation for the introduction of said exhibits was laid by a witness who was employed by Bisno as a secretary from February, 1955, until the date of the trial. This witness testified that green and blue copies of outgoing correspondence by Bisno and other persons working in his office were maintained in a chronological file. The witness identified the material contained in said exhibits as constituting the chronological file.

Bisno attacks the admissibility of said exhibits on several grounds. First, Bisno contends that said exhibits were "subject to the protective provisions of the Fourth, Fifth and Sixth Amendments of the Constitution of the United States." It is clear that no rights of Bisno under the Fourth or the Sixth Amendment were violated. The records involved were not recovered from Bisno by a search or seizure of any kind but vested in the trustee in bankruptcy by operation of law as of the date of the filing of the petition in bankruptcy. Hence rights under the Fourth Amendment are not involved. The receipt in evidence of said exhibits is not shown to be related in any way to rights guaranteed by the Sixth Amendment. In respect to the Fifth Amendment, Bisno contends that he is entitled to assert the rights against self-incrimination guaranteed by the Fifth Amendment in respect to the production of such records on the ground that he is required by law to turn over such records to the trustee and cannot refuse to do so. Bisno seeks to draw an analogy between this situation and the compulsory testimony which is required of the bankrupt in a Title 11 U.S.C.A. § 21, sub. a examination. Such testimony is expressly barred from use in a criminal proceeding by the Bankruptcy Act itself. (Title 11 U.S.C.A. § 25, sub. a (10).) Bisno's con-

tention is foreclosed. In Johnson v. United States, 228 U.S. 457, 33 S.Ct. 572, 57 L.Ed. 919 (1913) appears the following language:

"A party is privileged from producing the evidence but not from its production. The transfer by bankruptcy is no different from a transfer by execution of a volume with a confession written on the fly leaf. It is held that a criminal cannot protect himself by getting the legal title to corporate books. [Citations omitted] But the converse proposition is by no means true, that he may keep the protection from the introduction of documentary evidence that he would have had while he retained it, after the title and possession have gone to some one else.

"It is true that the transfer of the books may have been against the defendant's will, but it is compelled by law as a necessary incident to the distribution of his property, not in order to obtain criminal evidence against him. Of course, a man cannot protect his property from being used to pay his debts by attaching to it a disclosure of crime. If the documentary confession comes to a third hand *alio intuitu,* as this did, the use of it in court does not compel the defendant to be a witness against himself." 228 U.S. 458, 459, 33 S.Ct. 572.

■ In the second place, Bisno contends that some of the correspondence in said exhibits was not written by him, and argues that letters, as distinguished from records of events and book entries, are not admissible as an exception to the hearsay rule permitted by the Official Records Act, Title 28 U.S.C.A. § 1732. It is Bisno's position that the "Official Records Act does not extend to documents which purport to be simply recitals, like letters. And those are not records kept in the due course of business at all." We do not regard the Official Records Act as being so restrictive. This act permits the introduction into evidence of "any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, or occurrence, or events * * * if made in the regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter." The mere fact that the memoranda taken from chronological files are in the form of letters does not operate to remove the material in Exhibits 58A–65A from the Official Records Act. Neither does the fact that some of the letters were not written by Bisno himself affect the admissibility of such letters under the act, since that act provides "all other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility." We are aware that the admissibility of evidence under the Official Records Act is not established merely because the material sought to be introduced has been taken from a business file. A foundation must be laid to establish that the memoranda sought to be introduced were made in the regular course of business. Otherwise, the evidence is not admissible. Niederkrome v. C. I. R., 266 F.2d 238 (9th Cir. 1958); Standard Oil Company of California v. Moore, 251 F.2d 188 (9th Cir. 1958). There is testimony that said exhibits came from chronological files designed to preserve a record of all outgoing correspondence from Bisno's office and that such files were regularly maintained by Bisno's secretary. Sufficient foundation was laid to permit the receipt of such exhibits into evidence. We recognize that certain types of records are not admissible under the Official Records Act even if regularly maintained. See Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943) and In re Holzapfel's Sons, Inc., 249 F.2d 861 (7th Cir. 1957). Bisno has pointed to nothing about the form or substance of the correspondence appearing in Exhibits 58A–65A which removes it from the ambit of

the Official Records Act or places it outside the policy of exceptions to the hearsay rule contemplated by that act.

 In the third place, Bisno contends that it was error for the trial court to permit the introduction of said exhibits en masse. He contends that under the Official Records Act the trial court is required to rule separately upon the admissibility of each document which is a part of said exhibits. While Bisno complains that said exhibits contain many irrelvant writings, he has failed to point out any material in said exhibits which he claims to be irrelevant. He further contends that the introduction en masse of such exhibits prejudiced him in the eyes of the jury. Yet he fails to point out any material in said exhibits which misled the jury or erroneously influenced the verdict of the jury. In his attack on the ruling of the court Bisno relies on certain language in Schmeller v. United States, 143 F.2d 544 (6th Cir.1941). We have examined such case and find it inapposite to the facts of the instant case. While Bisno suggests that some of the documents contained in said exhibits might evidence transactions not charged in the indictment, he has utterly failed to specify what such documents may be or the prejudicial nature of such documents.

We find under the facts of this case no error prejudicial to the rights of Bisno in the admission of said Exhibits 58A–65A as business records pursuant to the Official Records Act.

The instructions which Bisno requested and which the district court refused to give are:

"The reliance by a bankrupt upon the advice of an attorney or an accountant is to be considered by you as an element in defendant's defense."

"You are to draw no adverse inferences from the fact that defendant did not, as argued by counsel for the prosecution, introduce evidence or certain evidence in this case. The burden of proof is at all times upon the prosecution to prove its case beyond a reasonable doubt, and the defendant may elect to produce no evidence at all, if he feels that the prosecution has not carried its burden in that respect."

"Where circumstantial evidence is presented, use of such evidence to support a verdict of guilty is proper only where such circumstantial evidence is inconsistent with innocence and consistent only with the guilt of the accused."

"The validity of the 'Bisno Trust' is not an issue here. The question of whether or not the creditors of the defendant or of the Moulin Rouge will be paid, has nothing to do with this case."

 In connection with the requested instruction relating to the advice of counsel, the evidence discloses that Bisno engaged the services of an attorney to prepare the schedules filed by Bisno. The attorney testified that he was never asked by Bisno to conceal any property and that when he was in doubt about the status of any particular item, he would mention such item and let the trustee draw his own conclusions. He further testified that due to the extensive nature of Bisno's operations and Bisno's inability to hire an accountant the task of preparing the schedules was very difficult. The attorney in his testimony did not mention some of the assets allegedly concealed by Bisno. There is no evidence in the record that assets which were not mentioned in the schedules were omitted because of the attorney's advice based upon full knowledge of all material facts. While the foregoing may constitute some evidence of good faith, it falls short of the minimum proof required to justify an instruction relating to advice of counsel. The requested instruction is not a complete statement of any defense to which Bisno may have been entitled. Advice of counsel is not regarded as a separate and distinct defense but rather as a circumstance indicating good faith which the trier of fact is entitled to consider on the issue of fraudulent intent. The

most that an accused is entitled to in a requested instruction relating to advice of counsel is set forth in Williamson v. United States, 207 U.S. 425, at page 453, 28 S.Ct. 163, at page 173, 52 L.Ed. 278 (1908), wherein the court stated:

"Having now placed before you the timber and stone law, and what it denounces, and what it permits, if a man honestly and in good faith seeks advice of a lawyer as to what he may lawfully do in the matter of loaning money to applicants under it, and fully and honestly lays all the facts before his counsel, and in good faith and honestly follows such advice, relying upon it and believing it to be correct, and only intends that his acts shall be lawful, he could not be convicted of crime which involves wilful and unlawful intent; even if such advice were an inaccurate construction of the law. But, on the other hand, no man can wilfully and knowingly violate the law, and excuse himself from the consequences thereof by pleading that he followed the advice of counsel."

See also In re Merritt, 28 F.2d 679 (9th Cir.1928).

Since Bisno did not testify as a witness in the case, the record is silent as to whether he sought in good faith the advice of counsel and fully and honestly laid all of the facts before his counsel and in good faith and honestly followed such advice, relying upon it and believing it to be correct. Moreover, advice of counsel has been held to be no defense in a situation in which the accused is generally advised by counsel but counsel is not shown to have advised the specific course of action with which the accused is charged. See United States v. McCormick, 67 F.2d 867 (2 Cir.1933); McNiel v. United States, 150 F. 82 (5 Cir.1907).

 Even if the facts in this case justified the giving of an instruction on advice of counsel, the requested instruction is completely inadequate. In the requested instruction the jury is not advised that it should consider advice of counsel as a circumstance negating fraudulent intent only upon the showing that Bisno made a full disclosure of all relevant and material facts to his attorney, nor is the jury cautioned that such defense is raised only if counsel had advised Bisno that, as a matter of law, he was not required to include in his schedules the specific items which the jury found had been concealed. Under the general instruction given by the district court on specific intent, the jury was entitled to consider the testimony of Bisno's counsel for what it was worth and not more. We find no error in the refusal to give the requested instruction.

In respect to the requested instruction concerning the failure of Bisno's wife to testify it is to be noted that neither she nor Bisno testified. Appropriate instructions concerning the failure of Bisno to testify were given.

The propriety of the requested instruction arises in relation to two items of property set forth in the indictment. These items are a $2,000 note made payable to Bisno's wife and a $2500 cashier's check made payable to her, which items represented the proceeds of the sale of the Parkview Hotel, title to which stood of record in the name of Bisno's wife. The Government introduced evidence in the form of a memorandum taken from Bisno's business files that Bisno purchased his wife's interest in these assets upon delivery to her of $6,000 in cashier's checks. It was the Government's position that these items of property belonged to Bisno. Bisno maintains he should not be charged with concealment of assets to which his wife had title. Bisno made no attempt to call his wife as a witness on his behalf to rebut evidence that his wife had transferred her rights in such items of property to Bisno for consideration. Counsel for the Government commented on the failure of Bisno's wife to testify.

In order to resolve the question as to the propriety of the refusal of the district court to give the requested instruction, we must review the development of the law on this subject. In Graves v. United

States, 150 U.S. 118, 14 S.Ct. 40, 37 L.Ed. 1021 (1893), the accused was on trial for murder. There was testimony that the accused's wife was seen in company with the accused and the person claimed to have been murdered near the scene of the murder. The wife of the accused did not appear as a witness or in the courtroom. Government counsel commented on her absence, pointing out that her presence in the courtroom might have aided witnesses in identifying the accused. The Supreme Court recognized the existence of the common law rule that "if a party has it peculiarly in his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable."

The Supreme Court, however, restricted this rule to witnesses who are competent to testify. Under common law rules in effect in federal courts at the time of the Graves case, a wife was incompetent to testify against her husband in a criminal trial. The Supreme Court held it was error to have commented on the wife's absence from the courtroom.

The rules as to the competency of a wife of an accused to testify in a trial involving her husband have changed since Graves. In Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933), the Supreme Court held that a wife is competent to testify on behalf of her husband in a criminal trial. The court characterized the new rule as a modification of a common law rule due to changed conditions. The court noted that there was no federal statute pertaining to the matter. This view of the function of the federal court to fashion rules of evidence comports with Federal Rules of Criminal Procedure, Rule 26, 18 U.S.C.A., subsequently enacted, which provides in part:

"The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

Following this guideline, federal courts have further refined the rules regarding the competency of a wife of an accused to testify in a criminal case. Thus, although a wife is now competent to testify, the accused husband retains the privilege to refuse to allow her to testify against him even if she is agreeable to doing so. Hawkins v. United States, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed. 2d 125 (1958). The wife also has a privilege not to testify, and she may exercise this privilege by refusing to testify either for or against her husband. Mills v. United States, 281 F.2d 736 (4 Cir.1960).

Applying these rules to the present situation, it appears that the Government could not have called Bisno's wife to testify over his objections. On the other hand, Bisno's wife could have testified on behalf of Bisno, but Bisno could not have compelled her to do so, since she could have refused to testify at all. Since the record is silent as to whether Bisno made any request that his wife testify for him, it is not known whether she would have been willing to do so.

We turn now to consideration of the rules governing comment on the non-production of a witness. See United States v. Jackson, 257 F.2d 41 (3 Cir.1958). In Samish v. United States, 223 F.2d 358 (9 Cir.1955), this circuit held that the prosecutor in that case could comment on defendant's failure to call his secretary to testify on his behalf, since the close association of the secretary with the defendant made it unreasonable to consider her as a neutral witness.

We thus have a situation where it might reasonably be expected that the testimony of Bisno's wife would be favorable to Bisno but where the Government has no right to call her as a witness over Bisno's objection. Thus this situation fits the phraseology of the narrower rule announced in Graves that Bisno "had it peculiarly within his power to produce" his wife as a witness. Bisno argues that

he did not have it within his power to compel his wife to testify in his favor because she could have refused to testify and, therefore, the trial court should not have permitted adverse comment on his failure to do an act which was legally impossible for him to do. This argument might have merit if Bisno had called his wife to testify for him and she had refused to do so. Bisno made no attempt to call his wife as a witness and therefore his argument assumes too much. The decision to testify on behalf of her husband rested solely with his wife. We do not believe that Bisno can rely on a privilege, personal to his wife, in order to defeat adverse comment by the Government. It is to be remembered that in connection with the note and cashier's check above-mentioned Bisno was charged with using his association with his wife to conceal such items from the trustee. If such items of property in truth belonged to Bisno's wife, no better testimony then hers could have been secured on behalf of Bisno. The failure of Bisno to make any attempt to produce her testimony when he alone had the opportunity to do so was a proper subject of comment. We wish to make it clear in this case that Bisno's wife was not called as a witness on his behalf and did not exercise her privilege to refuse to testify.

▇▇▇ We will now consider the requested instruction on circumstantial evidence. In Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), a tax evasion case, the tax court considered the refusal of the trial court to give a similar instruction and stated the rule as follows:

"There in some support for this type of instruction in the lower court decisions [citations omitted], but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect." [Citations omitted.]

"Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more." (348 U.S. at pages 139, 140, 75 S.Ct. at pages 137, 138)

See also Continental Baking Co. v. United States, 281 F.2d 137 (6th Cir.1960) expressly overruling prior authority to the contrary in the 6th circuit in light of the above rule stated in Holland. We have examined the instructions given on the subject of reasonable doubt and find that such instructions adequately cover the subject. We find no error in the refusal to give the requested instruction.

▇▇▇ In connection with the requested instruction concerning the "Bisno Trusts," we find that the court gave the following instruction:

"The only issues before you are those specifically spelled out in the indictment, and the plea of not guilty."

The refusal of the district court to give the requested instruction was proper and the giving of the requested negative instruction could have served only to confuse the jury.

▇▇▇ Finally, it is Bisno's contention that he was denied due process of law because of the refusal of the court to require the jury to render a special verdict as to each of the ten items of property which Bisno was charged with concealing. We have already noted that the concealment of assets from a trustee in bankruptcy is a single offense no matter how many items of property may have been concealed. Edwards v. United States, supra. We know of no authority which requires the return of special verdicts on a

single count indictment. The jury was instructed that a guilty verdict could be returned only if unanimous agreement were reached that Bisno concealed at least one of the items of property mentioned in the indictment. We cannot presume that the jury disregarded such instruction.

The judgment of conviction is affirmed.

HAMLEY, Circuit Judge (concurring).

My only question concerning the majority opinion has to do with the husband-wife privilege question.

Two of the ten specific items of property allegedly concealed were a note of the Exeter Hotel in the sum of $2,000 dated December 20, 1955, payable to Sally Bisno, and a cashier's check in the sum of $2,500, dated December 29, 1955, drawn on the Bank of America, Beverly Drive and Wilshire Branch, payable to "Al Bisno or Sally Bisno." Referring to these items in his rebuttal argument to the jury, counsel for the Government said:

"The $2,500.00 cashier's check and the money that went into the Exeter Hotel, Mr. Strong [counsel for appellant] states that this is all Sally's [appellant's wife]. What did Sally say? Sally didn't say anything. She sat in court and did not testify."

In an effort to offset this remark, counsel for appellant then proposed the following jury instruction:

"You are to draw no adverse inferences from the fact that defendant's wife did not testify at this trial. * * *"

The trial court refused to give this instruction and appellant argues that this was error. The majority opinion expresses the view that the court did not err in this regard.

I respectfully disagree. Appellant's privilege not to permit his wife to be called against him as a witness, and possibly his privilege against her disclosure of husband-wife communications were involved here despite the fact that the prosecution did not seek to call her as a witness. This is true for the reason that appellant could not call her as a witness in his own behalf without waiving these privileges as to her cross-examination. VII Wigmore on Evidence, McNaughton Revision, 1961 § 2242(3), page 258. Thus appellant's failure to call his wife as a witness represents an exercise of these privileges.

Where such privilege has been exercised, the established principle which permits an inference that the excluded testimony would be unfavorable to the party who suppressed it ought to yield, as being inconsistent with the full exercise of the privilege. See Wigmore, supra, § 2243, page 259. In my view, therefore, the trial court should have given the requested instruction.

I express no view as to whether the privilege which enables either spouse to exclude anti-marital fact testimony by the other should be retained, since in Hawkins v. United States, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125, the Supreme Court has ruled in its favor. As long as the privilege is recognized it ought not to be substantially undermined by permitting, in connection with its exercise, the usual inference with respect to the failure to produce available evidence. I agree with the majority that the privilege of the non-party spouse to refuse to testify (see Mills v. United States, 4 Cir., 281 F.2d 736), presents no problem for the reason that in so far as the record reveals, appellant made no attempt to call her.

Notwithstanding the view expressed above that the requested instruction should have been given, I would affirm. The wife's testimony would have been relevant only as to two of the ten items on which the single-count indictment was based. The evidence so overwhelmingly supports the Government's case as to the eight other items that it can be safely concluded that the jury would have reached the same verdict on the count in general, whether or not the requested instruction had been given. Failure to give the requested instruction was therefore, in my opinion, harmless error. See Rule 52(a) Federal Rules of Criminal Procedure, 18 U.S.C.A.