FILED

AUG 11 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br><br>PHILLIP MICHAEL SPENCER,<br><br>        Debtor.<br>_____<br>In re:<br><br>MARK S. BUCKMAN,<br><br>        Debtor.<br>_____<br>NEIL F. CAMPBELL,<br><br>        Appellant,<br><br>v.<br><br>PHILLIP MICHAEL SPENCER;<br>MARK S. BUCKMAN,<br><br>        Appellees.<br>_____ | BAP No.   SC-16-1253-FBJu<br><br>Bk. Nos.  3:14-bk-09514-MM<br>          3:14-bk-08384-MM<br><br>Adv. Nos. 3:15-ap-90039-MM<br>          3:15-ap-90042-MM<br><br><br><br><br><br><br>**MEMORANDUM**[*] |

Argued and Submitted on July 27, 2017
at Pasadena, California

Filed – August 11, 2017

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable Margaret M. Mann, Bankruptcy Judge, Presiding

Appearances:    Mark Scott Bagula of Bagula Riviere Coates and
Associates argued on behalf of appellant; Gregory
S. Hood argued on behalf of appellees.

_____

    [*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

Before: FARIS, BRAND, and JURY, Bankruptcy Judges.

**INTRODUCTION**

Creditor Neil F. Campbell appeals from the bankruptcy court's judgment on his § 523(a)(4)[1] nondischargeability claim in favor of chapter 7 debtors Phillip Michael Spencer and Mark S. Buckman (collectively, "Debtors"). The bankruptcy court held that a state court judgment on an arbitration award precluded relitigation of all issues except the Debtors' intent; after a trial, it found that the Debtors misled Mr. Campbell and failed to disclose certain information, but did so on the advice of counsel and did not intend to commit defalcation. We discern no error and AFFIRM.

**FACTUAL BACKGROUND**

**A.    The joint business venture**

In or around 2004, the Debtors, Mr. Campbell, and Gay Reeves formed Family Investment Management Group, LLC ("FIMG"), which offered clients financial advice and investment services. The members signed an agreement ("Operating Agreement") governing the operation of FIMG. Among other things, it dictated the proper procedure in the event that a member exited the company. It also provided that the parties would share equally in FIMG's profits. The arrangement later evolved (without a formal, written change to the Operating Agreement) to allow each member to receive monthly disbursements based on profits from their own "book of

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

2

accounts."

In 2007, Ms. Reeves decided to leave FIMG. The Operating Agreement provided that the remaining members were to purchase her interest in FIMG. They prepared a written exit agreement, but Ms. Reeves never signed it. They orally agreed that, in lieu of a payout or distribution, Ms. Reeves could instead take her "book of accounts" when she withdrew from the business. The remaining members then amended the Operating Agreement to reflect that each held a one-third interest in FIMG.

Between 2008 and 2010, Mr. Campbell created FUTR Family Management LLC and began working primarily under that company. On September 18, 2010, he physically moved out of FIMG's office. He indicated that he would no longer contribute to FIMG.

According to the trial testimony, the Debtors consulted their attorney, Paul Thomas, as to how to handle Mr. Campbell's withdrawal. He told them to proceed in the same way that they handled Ms. Reeves' departure – in other words, that they did not owe Mr. Campbell anything. He told them that Mr. Campbell was not entitled to receive information about FIMG's finances and that they should minimize their contact with Mr. Campbell.

The Debtors also testified that they consulted their accountant, Jeanne Goddard, who also advised them that they did not owe Mr. Campbell anything.

In October 2010, the Debtors (but not Mr. Campbell) executed an amendment to the Operating Agreement that reduced the members to only Mr. Spencer and Mr. Buckman. The amendment provided that the Debtors accepted Mr. Campbell's "voluntary withdrawal."

Later, without notice to Mr. Campbell, the Debtors attempted

3

to convert FIMG from an LLC into a limited partnership with only the Debtors as general partners.

After the Debtors formed the limited partnership, FIMG sent Mr. Campbell a K-1 tax form that indicated that Mr. Campbell held an interest in the FIMG partnership. According to Ms. Goddard, the partnership issued the K-1 form by mistake.

Between October 2010 and May 2012, the Debtors communicated with Mr. Campbell but failed to inform him that they had terminated his ownership interest in FIMG or changed FIMG's corporate structure. They also did not provide him with FIMG's financial information or disclose their conversations with Mr. Thomas or Ms. Goddard.

**B. The state court arbitration**

In June 2013, Mr. Campbell initiated arbitration proceedings against the Debtors for, among other things, breach of contract, breach of fiduciary duty, accounting, and constructive fraud. The arbitrator held that the Debtors had wrongfully excluded or expelled Mr. Campbell from FIMG and were liable for breach of contract and breach of fiduciary duty. He awarded Mr. Campbell over $250,000 plus interest. The state court confirmed the arbitration award.

**C. Bankruptcy proceedings**

In late 2014, the Debtors filed individual chapter 7 bankruptcy petitions. Mr. Campbell filed nondischargeability complaints against the Debtors in their respective cases under § 523(a)(4). The bankruptcy court later consolidated the adversary proceedings at Mr. Campbell's request.

4

**D.    The motion to dismiss**

The Debtors filed a motion to dismiss Mr. Campbell's complaint. The bankruptcy court held that most of the arbitrator's findings were entitled to preclusive effect, but it declined to give preclusive effect to the arbitrator's findings concerning the Debtors' intent. It noted that the arbitrator found that the Debtors' actions "clearly were done purposefully (and therefore willfully) . . . to deny [Campbell] the benefits of ownership as a Member of [FIMG]" which amounted "to intentional misconduct violating the statutory duty of care owed by one member to another[;]" yet he also found that the Debtors' actions were "fueled more by frustration, impatience with the elusiveness of an exit agreement with Campbell, failure to appreciate the need for strict compliance with the requirements of the LLC Agreement, and perhaps an unjustified fear of being sued by Campbell . . . rather than an intent to deceive." The bankruptcy court declined to give issue preclusive effect to the arbitrator's findings on the issue of intent because those findings were not sufficiently clear.

**E.    The motion to amend**

Following the bankruptcy court's denial of the motion to dismiss, the Debtors answered the adversary complaint. Shortly thereafter, they filed motions for leave to amend their answers. They sought to add an affirmative defense that they had reasonably relied on the advice of their attorney and accountant.

Mr. Campbell opposed the motions to amend, arguing that the Debtors' failure to raise this defense during the arbitration precluded them from raising it in the bankruptcy court and that

the defense also lacked merit.

The bankruptcy court held that the Debtors did not need to raise the advice-of-counsel issue in the state court or in their answer in the adversary proceeding. The court quoted <u>Bisno v. United States</u>, 299 F.2d 711, 719-20 (9th Cir. 1961): "Advice of counsel is not regarded as a separate and distinct defense but rather as a circumstance indicating good faith which the trier of fact is entitled to consider on the issue of fraudulent intent."

**F.    Trial**

Following a two-day trial on the limited issue of intent, the bankruptcy court held that the Debtors did not have an intent to defalcate. The bankruptcy court found that the Debtors consulted their attorney and accountant as to how they should handle Mr. Campbell's departure from FIMG. It found that they had presented Mr. Thomas and Ms. Goddard with "all material facts regarding Campbell's changing relationship with FIMG[,]" and it found that the Debtors relied upon their advice in good faith. Ms. Goddard informed the Debtors that they "did not owe Campbell any money." Mr. Thomas "was emphatic that Campbell had voluntarily withdrawn and was no longer an owner of FIMG when Campbell moved his office on September 18, 2010." The court found that, "[e]ven though Thomas' advice and understanding of the Operating Agreement was incorrect, Debtors believed in good faith the advice was correct and proper and acted accordingly."

The bankruptcy court found that the Debtors' statements to Mr. Campbell (and their silence) were "misleading" but not fraudulent and were "motivated by a fear of litigation, and not an intent to harm Campbell."

6

Based on these findings, the bankruptcy court concluded that the Debtors

> did not knowingly or even recklessly, create a risk of harm to Campbell since they honestly, if erroneously, believed he would not be harmed by the termination of FIMG. This belief was based on the advice of their counsel and accountant, since Debtors also believed Campbell had intentionally withdrawn from FIMG on September 18, 2010. Debtors did not believe that they would benefit at his detriment since he had no interest of value to appropriate for themselves. They did not intend to cheat Campbell.

Mr. Campbell timely filed a notice of appeal.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in determining that the Debtors' obligation to Mr. Campbell was not excepted from discharge under § 523(a)(4).

## STANDARDS OF REVIEW

In bankruptcy discharge appeals after trial, we review the bankruptcy court's findings of fact for clear error and conclusions of law de novo, and we apply de novo review to mixed questions of law and fact. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009), aff'd, 407 F. App'x 176 (9th Cir. 2010) (citation omitted). De novo review requires that we consider a matter anew, as if no decision had been rendered previously. United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988).

We review the bankruptcy court's findings of fact for clear

7

error.  Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 378 (9th Cir. BAP 2011).  A factual finding is clearly erroneous if, after examining the evidence, the reviewing court "is left with the definite and firm conviction that a mistake has been committed."  Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985).  The bankruptcy court's choice among multiple plausible views of the evidence cannot be clear error.  United States v. Elliott, 322 F.3d 710, 714 (9th Cir. 2003).

The availability of issue preclusion is reviewed de novo, but "[i]f issue preclusion is available, the decision to apply it is reviewed for abuse of discretion."  Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007) (citations omitted).  To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record.  United States v. Hinkson, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

## DISCUSSION

**A.    Section 523(a)(4) excepts from discharge debts arising from fraud or defalcation and requires a culpable state of mind.**

Section § 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity

8

. . . ."[2]  "The creditor must establish three elements for nondischargeability under this provision: (1) an express trust; (2) that the debt was caused by fraud or defalcation; and (3) that the debtor was a fiduciary to the creditor at the time the debt was created." Nahman v. Jacks (In re Jacks), 266 B.R. 728, 735 (9th Cir. BAP 2001) (citation omitted).

In order to prove defalcation, the creditor must establish a "culpable state of mind . . . involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." Bullock v. BankChampaign, N.A., 133 S. Ct. 1754, 1757 (2013). The conduct must involve bad faith, moral turpitude, other immoral conduct, or an intentional wrong (meaning conduct that the fiduciary knows is improper or if the fiduciary "consciously disregards" or is willfully blind to "a substantial and unjustifiable risk" that his conduct will violate a fiduciary duty). Id. at 1759.

**B.   The bankruptcy court properly held a trial on the limited issue of Mr. Campbell's intent.**

Mr. Campbell argues that the bankruptcy court should have applied issue preclusion to the question of the Debtors' intent because the arbitrator "unequivocally" found that the Debtors "acted intentionally when they breached their fiduciary duty." We disagree.

Because the judgment in question was rendered by a California court, the California law of preclusion applies.

---

[2] Section 523(a)(4) also covers debts for embezzlement or larceny, but Mr. Campbell did not claim that the Debtors' actions amounted to either embezzlement or larceny.

9

*Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 462 (9th Cir. BAP 2015) (citing *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001)). Under California law, issue preclusion applies if a five-part test is satisfied: (1) the issue must be identical to the issue litigated in the prior proceeding; (2) the issue must have been actually litigated; (3) the issue must have been necessarily decided in the prior proceeding; (4) the decision in the prior proceeding must be final and on the merits; and (5) the party against whom preclusion will be applied must be the same as, or in privity with, the original party. *Sturgeon-Garcia v. Cagno*, 567 B.R. 364, 370 (N.D. Cal. 2017). Moreover, there is an "'additional' inquiry into whether imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy." *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 824-25 (9th Cir. BAP 2006), *aff'd*, 506 F.3d 956 (9th Cir. 2007) (citations omitted) (applying California law).

"The party asserting issue preclusion has the burden of proving these requirements have been met, and 'reasonable doubts about what was decided in the prior action should be resolved against the party seeking to assert preclusion.'" *Sturgeon-Garcia*, 567 B.R. at 370 (quoting *In re Honkanen*, 446 B.R. at 382).

Mr. Campbell selectively cites the arbitrator's findings that the Debtors acted "purposefully (and therefore willingly)" and engaged in "intentional misconduct violating the statutory duty of care owed by one member to another." Normally, these findings would be preclusive as to a debtor's intent. But the

10

arbitrator also found that the Debtors' actions were the result of "frustration, impatience . . . failure to appreciate the need for strict compliance with the requirements of the Operating Agreement and perhaps unjustified fear of being sued by Mr. Campbell." He went on to state that "it does not appear that any non-disclosure was done with intent to deceive . . . . [T]heir actions betray more of a simple ignorance of and perhaps cavalier attitude toward the formalities of business organization and governance."

Given these contradictory findings, the bankruptcy court did not abuse its discretion in declining to apply issue preclusion to the arbitrator's findings on intent. It did not need to give issue preclusive effect to an unclear or ambiguous decision: "The discretionary aspect of issue preclusion is settled as a matter of federal law. . . . Thus, reasonable doubts about what was decided in a prior judgment are resolved against applying issue preclusion." In re Lopez, 367 B.R. at 107-08 (noting that "California law is consistent with federal law on the question of discretionary application of issue preclusion"); see Catholic Soc. Servs., Inc. v. I.N.S., 232 F.3d 1139, 1152 (9th Cir. 2000) ("[W]hen a decision in prior litigation is unclear, that decision does not preclude subsequent litigation on that issue."); Genesis VJ, Inc. v. Nguyen (In re Nguyen), BAP No. CC-11-1379-LaPaMk, 2012 WL 603680, at *7 (9th Cir. BAP Feb. 17, 2012) ("As a matter of fairness, when faced with serious questions about the scope of a ruling, the bankruptcy court should err on the side of caution and avoid applying issue preclusion when a state court's exact determination is ambiguous.").

11

California law is equally clear that courts have broad discretion to apply issue preclusion: "In California, issue preclusion is not applied automatically or rigidly, and courts are permitted to decline to give issue preclusive effect to prior judgments in deference of [sic] countervailing considerations of fairness." In re Lopez, 367 B.R. at 108. In other words, even if the arbitrator's findings were clear, the bankruptcy court had broad discretion to refuse to give his findings issue preclusive effect.

The bankruptcy court properly resolved doubts about the arbitrator's findings against Mr. Campbell, the party asserting issue preclusion. The bankruptcy court did not err when it required additional litigation.

**C.    The Debtors could properly rely on the advice of counsel and established that they did so in good faith.**

Mr. Campbell argues that (1) the bankruptcy court should not have allowed the Debtors to argue that they relied on the advice of their attorney and accountant and (2) the court erred in finding that they relied on such advice. We discern no error.

**1.    The Debtors were entitled to assert their reliance on the advice of their attorney and accountant.**

Mr. Campbell argues that the Debtors were precluded[3] from asserting an advice-of-counsel defense because they did not raise

[3] "Issue preclusion" is the modern term for "collateral estoppel," while "claim preclusion" is the modern term for "res judicata." Mr. Campbell uses the term "res judicata" without distinguishing between issue preclusion and claim preclusion and cites cases that deal with both issue preclusion and claim preclusion. We assume that Mr. Campbell intends to invoke issue preclusion because claim preclusion cannot apply in this context.

12

it during the earlier arbitration. He cites various out-of-circuit cases and cases standing for the general proposition that defenses not raised in an earlier proceeding can be precluded in subsequent litigation.

However, the Ninth Circuit has explicitly held that "[a]dvice of counsel is not regarded as a separate and distinct defense but rather as a circumstance indicating good faith which the trier of fact is entitled to consider on the issue of fraudulent intent." Bisno, 299 F.2d at 719. In the context of bankruptcy and dischargeability, the Ninth Circuit has stated:

> It is true that "[g]enerally, a debtor who acts in reliance on the advice of his attorney lacks the intent required to deny him a discharge of his debts." That reliance, however, must be "in good faith." This court has held that the advice of counsel claim is not a separate defense, but rather "a circumstance indicating good faith which the trier of fact is entitled to consider on the issue of fraudulent intent."

Maring v. PG Alaska Crab Inv. Co. LLC (In re Maring), 338 F. App'x 655, 658 (9th Cir. 2009) (internal citations and emphasis omitted).

Based on the well-settled rule in the Ninth Circuit, the Debtors did not need to plead advice of counsel as an affirmative defense. A debtor may raise advice of counsel as evidence of its good faith and to negate an allegation of fraudulent intent. In other words, it is of no consequence that the Debtors did not affirmatively assert their reliance on Mr. Thomas' and Ms. Goddard's advice in the arbitration proceeding or earlier in the bankruptcy case.

Mr. Campbell states, "[t]o introduce a new 'issue' at trial contradicted the earlier order of the Bankruptcy Court that only

13

one issue would be tried." But there was only one issue: whether the Debtors had the necessary intent to commit fraud or defalcation. They were entitled to argue that they did not have such intent because they relied on the advice of their counsel.

**2. The court properly found that the Debtors relied on Mr. Thomas' advice.**

Mr. Campbell also contends that the bankruptcy court's factual findings about advice of counsel were wrong. He claims that the Debtors did not follow their attorney's advice and there is no evidence that he even provided such advice. But the court's findings were based on the consistent testimony of the Debtors, Mr. Thomas, and Ms. Goddard, which the court found credible. The court did not clearly err in determining that the Debtors properly sought and relied upon the advice of counsel.

**D. The bankruptcy court properly considered and rejected Mr. Campbell's arguments regarding failure to account.**

Mr. Campbell also contends that the bankruptcy court erred when it neglected to consider whether the Debtors intentionally failed to account. He is wrong.

The bankruptcy court addressed the communications between the Debtors and Mr. Campbell and the Debtors' failure to disclose certain information to Mr. Campbell. The bankruptcy court disapproved of the Debtors' conduct, stating that it was "regrettable," "misleading," and marked by "some prevaricating and less than candid conduct." Thus, Mr. Campbell is wrong that the bankruptcy court ignored the accounting issue.

Mr. Campbell asserts that, even if the bankruptcy court ruled on the failure to account, it applied the wrong legal

14

standard because the Debtors admitted that they were motivated by fear of litigation. But the bankruptcy court made clear that the Debtors' desire to avoid litigation with Mr. Campbell caused them to rely on Mr. Thomas' and Ms. Goddard's advice; it did not rule that a fear of litigation excuses an intent to defalcate. The bankruptcy court did not misapply any legal standard.

**E.    There is no merit to the alleged factual errors.**

Mr. Campbell identifies a smattering of alleged errors or omissions in the court's factual findings. We have carefully reviewed the record, and we hold that none of these purported mistakes amounts to clear error.

Mr. Spencer further argues that the bankruptcy court improperly ignored evidence that would support his case. Simply stated, Mr. Campbell is upset that the bankruptcy court did not accept his version of events. There is no indication that the bankruptcy court "ignored" evidence; it weighed the competing pieces of evidence and decided which were more plausible.

**CONCLUSION**

The bankruptcy court did not err. Accordingly, we AFFIRM.

15
